## KINZER *v.* MITCHELL.

The acts and declarations of parties in the presence of each other, or the acts and declarations of the party to be affected thereby, in relation to the subject-matter, and which constitute parts of the *res gesta*, and enter into the character of the whole transaction, are evidence, as conducing or tending to prove the allegations made by the party in whose favour they operate; and their weight, either separately or collectively, is for the jury.

Evidence of the acts and declarations of parties in the presence of each other, or of the acts and declarations of the party to be affected thereby, and which constitute parts of the *res gesta*, and enter into the character of the whole transaction, is not to be taken in detached parts, and each one rejected, because it does not make out the case; but it is all to be taken together, and each part admitted as a link in the chain of connected facts and circumstances by which *fraud* is most frequently effectually established.

Where it appeared from certain proceedings in the Orphans' Court, that the settlement of the second account of an administrator exhibited a balance of $157.84, in favour of the accountant; that the day after the said account was confirmed and allowed by the court, a petition was presented by the administrator for an order to sell the real estate of the decedent, consisting of a tract of land containing 156 acres, for the payment of debts, which order was granted by the court; that the only debt against the said estate, was the said balance of $157.84, in favour of the administrator as exhibited on the face of his *second* account; that the administrator returned a sale of *one-third* of the tract to the husband of a daughter of the decedent, and of the other *two-thirds* to the guardian of two minor children of the said decedent, and that the said sale was confirmed by the court: Held, that the record itself afforded the strongest evidence that the proceedings were a partition among the heirs, and not a sale; and this, independently of parol evidence, which showed that the widow and heirs, with the aid of a surveyor, made an amicable partition of the land by metes and bounds, agreed upon the part which should go to the married daughter, and which to the other two heirs, and agreed also upon the sum at which the said parts should be returned as sold by the administrator, which was strong evidence that the proceedings in the Orphans' Court were designed by the widow and heirs as a convenient mode of settling the estate, and were a partition among the heirs, and not a sale for the payment of debts.

Where the administrator in such case, returned that he had sold one-third of his intestate's real estate to the husband of a married daughter of the intestate, and the other two-thirds to the guardian of the other two minor children of the intestate, which sales were confirmed by the court; and the said husband and wife, in consideration of a deed delivered to them, for their said part of the said real estate, executed and delivered to the administrator a release in full satisfaction of their share of the said estate, and of all claims or demands against the same, and no money had been paid by the husband to the administrator, *it was held*, that that part of the real estate returned as sold to the husband belonged to his wife, the daughter, and one of the heirs of the intestate, and that any attempt by the husband to set up title to it in himself, was a *fraud* upon the wife.

The administrator, in such cases, is a competent witness to prove facts connected with the alleged sale, and upon the question of the payment of money by the husband.

The acts and declarations of the husband after judgment obtained and entered against him, which were not communicated to the plaintiff in the judgment, nor to the purchaser at sheriff's sale, will not affect the rights of either: unless it be made to appear that there was a concerted plan between the husband and the plaintiff on the judgment, in which the purchaser was a participant, to defeat the wife, and deprive her of her estate or interest in the land.

In error from the District Court of Lancaster county.

*May* 12. Ejectment by George H. Kinzer against Martha Mitchell, for fifty-two acres and eighty perches of land, situated in Colerain township, Lancaster county. The parties claimed under William Kerr, who died intestate, and seised of the land in controversy, leaving a widow and three children, Martha, the wife of James Mitchell, and two minors. This cause was up in 1847, and is reported in 5 Barr, 216. The facts of the case are sufficiently stated in that report, and in the charge of Judge HAYS to the jury at the late trial, which is here given entire.

*Charge.*—"This is the second trial between these parties. The cause was first tried about a year ago. The District Court, on that occasion, overruled the testimony offered by the defendant, considering it incompetent to impeach, by such testimony, the decrees and judgments which had been given in evidence by the plaintiff, and on which his title was founded, and considering those decrees and judgments as conclusive. That trial was, of course, a very short one. But the case was removed to the Supreme Court, and passed under their review; by which court it has been decided that the District Court ought to have received the testimony offered; and that if the defendant had proved what was offered, the verdict ought to have been in her favour.

"The record has been remitted for another trial; and now, at the close of this trial, I may say that I have yielded willing obedience to the authority of the court of the last resort, anxious at all times to be guided by their superior wisdom.

"This is an action of ejectment by George H. Kinzer, purchaser at sheriff's sale of the land in dispute, against Martha Mitchell, who claims it as one of the children of William Kerr, deceased. The land lies in Colerain township, and consists of fifty-two acres and eighty perches. It was sold by the sheriff, March 13, 1845, by virtue of an execution issued on a judgment of Henry Kinzer against James Mitchell, entered in the District Court on the 25th of November, 1841, for $1,200. It was sold as the estate of James Mitchell, and struck down to George H. Kinzer, for the sum of $800; to whom the sheriff made and duly acknowledged a deed for the same on the 18th of June, 1845.

" His title being thus founded upon the sheriff's deed and the estate of James Mitchell, the plaintiff has exhibited in support of it the deed of Eneas McCreedy, administrator of William Kerr, to James Mitchell, dated 17th of June, 1822, for this land, together with the proceedings of the Orphans' Court ordering the sale of the same, and of the administrator in pursuance thereof, resulting in this deed; also the letters of administration granted to the said administrator, Eneas McCreedy, on the 14th of December, 1815; his administration bond, three administration accounts, the judgment of Henry Kinzer, and proceedings in execution, with the sale and sheriff's deed.

" The defendant's (Martha Mitchell) title is founded upon the estate of her father, who died intestate, the owner of this and other land, leaving three children, including her. James Mitchell was her husband. She contended, and gave evidence to show, that the proceedings in the Orphans' Court and the administrator's deed to James Mitchell, and the deed to the guardian of the two younger children, were in fact a mode agreed upon between the administrator and the children for the equal division of the real estate of their father among them; that there was, in point of fact, no sale by public vendue or outcry, of the premises, but that James Mitchell, her husband, in her right, as eldest child, chose the one-third, i. e. the fifty-two acres and eighty perches now in controversy, and the administrator returned it sold to him, and also returned the other two-thirds as sold to Heidelbaugh, the guardian of the two younger children, without being paid a cent of purchase-money by any of them; that James Mitchell paid nothing, and that the administrator made the return or report of sale and the deed, in consummation of the arrangement for dividing this property, and for that purpose alone; and that in truth and equity, her rights were not divested or changed by this proceeding, except by the assignment to her of this part in severalty, instead of holding, as she did before, an undivided third part of the whole estate, in common with the other two children. She further contended that James Mitchell's interest in this land was but a life estate, that the administrator's deed did not vest in him the absolute fee, but that he became merely the trustee for her under the same. Of this she urged and gave evidence, that Henry Kinzer, the plaintiff in the judgment and the real plaintiff, as she insisted, in this cause, and George H. Kinzer, the purchaser at sheriff's sale, had notice; and she has endeavoured to show that the judgment of Henry Kinzer was obtained by the confession of

James Mitchell, as a part of the scheme concocted by the latter, in conjunction with the former, to cut her out and deprive her of her rights in the estate; that James Mitchell did not really borrow $1,200 from Henry Kinzer; that the loan was a sham, and the whole transaction a deception and fraud, intended for that purpose. Under the recent decision of the Supreme Court, the defendant has been allowed to go into evidence, explaining the real design of the proceedings in the Orphans' Court, and to impeach the judgment on which the land in question was sold by the sheriff. The plaintiff relies upon these proceedings and the judgment as establishing his title in a manner not to be shaken, insisting that they are *bonâ fide* and fair in all respects, as well as conclusive upon the defendant in point of law."

On the trial in the court below, bills of exception to the admission of the following evidence, was taken by the plaintiff:—

Defendant offered in evidence the deposition of Eneas S. McCreedy, who was the administrator of William Kerr, deceased; which was objected to by the plaintiff. But the court admitted the deposition, and sealed plaintiff's *first bill of exception.*

The deponent testified, that in 1820, he obtained an order of the Orphans' Court of Lancaster county, to sell the real estate of William Kerr, deceased, consisting in the whole, of one hundred and fifty-six acres of land, for the payment of debts; that he offered the entire tract at public sale two or three times, but could not effect a sale thereof; and that after it could not be sold, it was divided in parts and averaged amongst the heirs, of whom Martha Mitchell, the defendant, and wife of James Mitchell, was one; that James Mitchell never paid him any money for the part he got in right of his wife, nor did John Heidelbaugh as the guardian of the two other heirs for the parts taken for them; and that Mitchell and wife gave him a release, in full satisfaction of all claims and demands against the estate of William Kerr, deceased.

The defendant then gave in evidence, under objection by the plaintiff, the release of James Mitchell, and Martha Mitchell, his wife, to Eneas S. McCreedy, as administrator of William Kerr, deceased. This was plaintiff's *second bill of exception.*

He then called John Heidelbaugh, jun., and offered to prove by him, that his father, John Heidelbaugh, was guardian of the other two heirs of William Kerr, deceased, and that his father, James Mitchell, and the widow, agreed that the land should be divided into three parts and should be taken by the heirs; that his father being unable to attend at the premises, the witness, his son, was

deputed to go over to the land; that he attended accordingly, and the division was made pursuant to the agreement; that James Mitchell insisted upon having the first choice as being in right of his wife, the oldest heir; that the land was appraised at $8; and that James Mitchell in pursuance of this arrangement chose the one-third of the premises in question; which was returned as sold to him: to be followed up by the proof, that the plaintiff had notice of the defendant's title, before the sheriff's sale. To the admission of this evidence, the plaintiff objected; but the court admitted it, and sealed plaintiff's *third bill*.

He then offered in evidence the appraisement of the property under order of the Orphans' Court, the order to divide amongst the heirs, September 16, 1818, and the petition for the appraisement, signed by James Mitchell, in the name of his wife, and John Heidelbaugh, on the 12th of September, 1818. This evidence was objected to by the plaintiff, because the proceedings embraced in the offer were precedent to the petition for sale for payment of debts, and because they were irrelevant. The defendant stated that the object of the offer was to show that the subsequent order of sale for the payment of debts was, in fact, only to divide. The court, thereupon, admitted the evidence, and sealed plaintiff's *fourth bill*.

The proceedings showed, that the real estate of William Kerr, deceased, was parted, divided, and appraised as follows :—

10th Oct. 1818 { No. 1. 97 acres, 67 perches, at $25 per acre.
" 2. 60 " 55 perches, at $9.50 per acre.
October 12th, 1818, read and confirmed.

The defendant then called Daniel Ehler, and after showing him the sheriff's deed to George H. Kinzer, the plaintiff, for the land in controversy, offered to ask the witness,—who it was that paid the purchase-money, for the purpose of showing that the purchaser was living at home with his father, and that his father was in fact the purchaser. To the admission of the evidence thus offered, the plaintiff objected, on the ground that, as the deed had been given in evidence, the receipt therein showed who paid the sheriff. The court admitted the evidence, and sealed plaintiff's *fifth bill*.

The witness testified, that there was no purchase-money paid; that the office costs were paid, and Henry Kinzer, the father of George H. Kinzer, who was the oldest judgment creditor, receipted for the net proceeds; that George paid no money that he knew of;

and that if he did not live with his father, he knew not where he lived at the time.

The defendant then, after giving in evidence a bill to perpetuate testimony, in which Martha Mitchell was plaintiff and Henry Kinzer defendant, entered on the 25th of March, 1844, to April term, 1844, offered the depositions taken thereunder, and filed September 9th, 1844, to show notice to Henry Kinzer of Martha Mitchell's claim of title to the land, and for no other purpose. The court admitted the depositions, under objection by *the plaintiff;* which was his *sixth bill.*

The reasons for setting aside the sheriff's sale to George H. Kinzer, were then offered in evidence by the defendant, to show the grounds upon which the *motion* to set aside the said sale was based: the said motion having been given in evidence by the plaintiff, without reading the reasons. The court admitted the evidence, after the defendant had proved the service of a copy of the reasons upon George H. Kinzer, under objection by the plaintiff, which was his *seventh bill.*

Defendant then called George Thompson, and offered to prove by him, " that James Mitchell abused his wife and family before his death, and drove his wife from her home; that they, after this, lived *separate*, up to the time of his death; that after his death, she returned to the property now in dispute, lived upon it, worked it, and claimed and used it as her own: of which facts Henry Kinzer, the plaintiff in the judgment, had notice before the sheriff's sale." The court admitted the evidence (which was offered and objected to, in detached parts) under objections by the *plaintiff,* and sealed his *eighth, ninth, tenth, eleventh,* and *twelfth bills of exception.*

The facts contained in the offer were then proved by the witness.

Defendant then called Ross A. Campbell as a witness, and offered to prove by him, that he had a conversation with Henry Kinzer in relation to his judgment against James Mitchell, and what that conversation was. The court admitted the evidence, under objection by the plaintiff; and this was plaintiff's *thirteenth bill.*

It appeared from the testimony of this witness, that Henry Kinzer told him that he held a judgment for $1,200 against James Mitchell, for money loaned; that he had borrowed the money from a neighbour to give to him; that to a remark of witness, that he did not know why Mitchell borrowed the money, he not being a business man, nor in debt, Kinzer replied, that he did not know what James Mitchell did with his money; that there was a dispute

between Mitchell and a part of his family; that he seemed willing to do anything to prevent his wife and elder children from getting or having any part of the property; and that Mitchell had not paid any interest, and that he owed him for two years.

Defendant then offered to ask witness, whether after November, 1841, to the time of his death, he ever knew Mitchell to lay out any large sum of money, or make any purchase? The plaintiff objected, on the ground that neither the acts nor declarations of James Mitchell could affect him without notice. Objection overruled, and plaintiff's *fourteenth bill* sealed.

In answer to the question, the witness stated that he never knew Mitchell lay out any large sum of money, or build, or purchase.

The plaintiff's *fifteenth bill of exception* was to the admission in evidence of a conversation between a witness and Henry Kinzer, in relation to the place or land in dispute; and as to where he got money loaned to Mitchell. Kinzer, it appeared, told the witness that he had got Mitchell's place; that he had a judgment against it for $1,200, for that sum loaned to Mitchell; that he got the money so loaned from the bank; and that Diller Baker was his endorser; and that some of his neighbours said the place was worth $1,400.

The plaintiff's *sixteenth bill of exception* was to the admission of evidence of the value of the land in the fall of 1841. The grounds of objection were, that it was opinion merely, and irrelevant. To this the defendant replied, that opinion proved the value of land, and that the value was evidence on the question of fraud. Witness stated it was not worth more than $1,000.

The plaintiff's *seventeenth bill of exception* was to the admission of evidence that Martha Mitchell, after she was beaten by and driven from her house by her husband, James Mitchell, lived apart from him; that after his death, she returned to the place, the land in dispute, claiming it as her own; and that, after she had taken possession, the witness heard her say and declare that she took and held possession of the place as her own.

The plaintiff's *eighteenth, nineteenth, twentieth, twenty-first, twenty-second, twenty-third, twenty-fourth, twenty-fifth, twenty-sixth, twenty-seventh, twenty-eighth, twenty-ninth, thirtieth, thirty-first,* and *thirty-second bills of exception,* were to the admission of the following evidence, given by different witnesses:—That immediately before James Mitchell gave the judgment for $1,200 to Henry Kinzer, in the fall of 1841, he (Mitchell) consulted with several of the witnesses, as to the mode or manner by which he

could cut his wife and eldest son, William, out of the property now in controversy; that at the request of Mitchell, one of the witnesses took him over to Henry Kinzer's, in the fall of 1841, for the purpose, as Mitchell said, of getting his property *fixed so* that his wife and eldest son, William, should never get any part of it; and that after he (Mitchell) came home, he told witnesses he had got it fixed so as to cut his wife and William out, and that the property would go to his youngest children; that Mitchell, in a conversation with one of the witnesses, said he had given a judgment, but did not state to whom; that his wife had sued him, or was going to sue him, for a separate living or maintenance; that he had given the judgment to prevent her from getting anything; that he did not need the money he had got, and never intended to use any part of it; that he showed to witness a bunch of paper money, saying that was his own, independently of the other; that he also showed witness two promissory notes; that the property in controversy, in the fall of 1841, was worth $14 or $15 an acre; that in a conversation with another witness whom he consulted as to the plan of cutting his wife and eldest son out of the property, Mitchell said he would try and have it fixed so that they should never be a farthing better for the property in his possession; that some time after this, witness heard him say he had given a judgment; that he told witness he had given Henry Kinzer a judgment, and got his property fixed as he wanted it; that witness borrowed $140 of him, previously to the fall of 1841; that he never pressed for the payment of it, and that witness could have paid it in the fall of 1841, if Mitchell had requested him to do so; that in the fall of 1842, Mitchell told another witness that he had assigned his property over to Henry Kinzer, for the purpose of cutting out his wife and eldest boy; that to another witness he said he had given Henry Kinzer a judgment for $1,200, for the purpose of putting a stop to any further trouble with his family, as he was determined his wife and eldest son should never get a cent of his property; that the reported failure of Henry Kinzer was for the purpose of frightening him; that in a conversation with witness about making his will, he said he wanted his real estate left to his three youngest children, and his personal property to his eldest daughter Ellen, who had taken care of him; that he would rather Henry Kinzer should get the amount of his judgment than that his wife should get one cent, and that this was a short time before his death; that the appraisers found a ten dollar bank note in a chest at the time of the appraisement, and sixteen dol-

lars in silver was subsequently found enclosed in a newspaper, in a barrel of wheat standing in one of the sleeping-rooms of his late dwelling-house.

The plaintiff's *thirty-third, thirty-fourth,* and *thirty-fifth bills of exception,* were to the admission of evidence of the value of the land in controversy, and of the expressed determination of Mitchell to cut out his wife and eldest son out of any participation in the property, and of his avowed preference in favour of Henry Kinzer getting the whole property, to his wife and eldest son getting one cent out of it; that he had given the judgment to Henry Kinzer for the purpose of depriving them of any portion of it; that he showed witness $35 in money, and said he had obligations against different persons for $200; that he had not given the judgment because he wanted money, and that he owed no man a cent, except what he owed the witness for attending his son, which he offered to pay him.

The *thirty-sixth bill of exception* of plaintiff was to the admission of the record of the indictment for assault and battery committed by James Mitchell on his wife, Martha Mitchell, on the oath of the said Martha; which was offered in evidence for the purpose of showing the difficulty in the family, and of fixing the time.

The plaintiff's *thirty-seventh, thirty-eighth, thirty-ninth,* and *fortieth bills of exception,* not being deemed material, are not noticed in this report.

Each party propounded a number of points, upon which they requested the instructions of the court to the jury. These points, with the answers of the court thereto, were as follows:—

On the part of the plaintiff the first and second points were as follows, viz:—

1. The title of plaintiff to recover the land claimed, is founded upon a sheriff's sale, under a judgment obtained by Henry Kinzer against James Mitchell. The application of Martha Mitchell, administratrix of James Mitchell, deceased, to be let into a defence; and the judgment of the court thereon; her appearance to the *scire facias* to show cause why execution should not issue; and the judgment thereon, are conclusive, as to the validity and fairness of the same; and it is not in her power to impeach it in this action.

2. The rendition of the judgment against the administratrix on the *scire facias* above stated, is conclusive evidence that the same is unpaid; and she is estopped from saying that the same has been either paid or discharged; and the jury has no right to make any such inference from the declarations given in evidence.

To which the court answered, that notwithstanding the application of Martha Mitchell as administratrix of James Mitchell, deceased, as set forth in this proposition; the Supreme Court has decided, that she is not concluded, but may nevertheless impeach the judgment in this action, on the ground of fraud and covin invented to injure her, and show that this judgment was not given to secure the payment of a just debt, but that it was a part of a scheme for defrauding the defendant out of her just rights.

3. The petition in the Orphans' Court for the sale of the real estate for the payment of debts, and the decree of the Orphans' Court; and the subsequent sale operate as a conversion of the real estate; and are conclusive upon all the parties claiming under the intestate; and neither the testimony of John Heidelbaugh or the facts proved, tend to show that the decree of the Orphans' Court was founded upon misrepresentation or fraud; or that the debt claimed by the administrator of Wm. Kerr, deceased was not, *bonâ fide*, due to him; or that any concert to defraud existed between the purchaser and the administrator; and without the proof of these facts, or some of them, the defendant cannot impeach the conclusiveness of the decree of sale.

The answer of the court to this point was, that if this decree of the Orphans' Court and the subsequent proceedings founded upon it, were in form only a sale, but in substance and effect a mere division of the intestate's real estate among his children, and if no money consideration was in fact paid by James Mitchell to the administrator for the deed to him—those proceedings did not operate as a conversion of the real estate,—and that although the decree and proceedings of the administrator were fair and honestly intended, yet it is competent for the defendant to show their real purpose, and that the conduct of James Mitchell in attempting to defeat that purpose, was a fraud upon her.

4. There is no evidence that James Mitchell became the purchaser at the Orphans' Court sale, to hold the land in trust for his wife; and even if this fact were otherwise, it could not affect the rights of the judgment creditor; or the purchaser at sheriff's sale, without express notice.

In answer to this point, the court said, that it was one of the questions of fact in the case, whether James Mitchell was actually a purchaser or not. This question depends upon the real character of the proceedings referred to. If they were only a method of dividing the real estate of the intestate among his children, he was not a purchaser by reason of the deed to him, so as to give

him the absolute right, any more than John Heidelbaugh was a purchaser in his own absolute right of the two parts assigned to his wards; but so far as the right was vested in James Mitchell, it was as trustee for his wife. If this fact be so, notice of it, either express, that is, by proof of actual knowledge of the fact, or constructive notice, that is, by such knowledge as would induce inquiry and lead to the fact, if shown to have been received and enjoyed by the plaintiff in the judgment and the purchaser at sheriff's sale, is sufficient to affect their rights. Whether such notice has been proved, it is for the jury to determine.

5. The testimony of Heidelbaugh and McCreedy cannot alter or affect the decree of the sale made by the Orphans' Court; and without express notice of the facts thus stated to the judgment creditor and purchaser at sheriff's sale, such facts cannot affect the rights and interests of either; and there is no evidence of any such notice.

This, as to the matter of fact and as to the evidence of notice, was referred to the jury.

6. The acts and declarations of James Mitchell, after judgment rendered in favour of Henry Kinzer, not communicated to him or the purchaser at sheriff's sale, cannot affect the rights of either, and the jury is bound to disregard them.

*Answer.*—Such acts and declarations are evidence, if the jury think there was a concerted plan between James Mitchell and the plaintiff in the judgment, to which the purchaser was privy, and in which he was a participant, to defeat the defendant, Martha Mitchell, and deprive her of her interest in this property; otherwise, they are not.

On the part of the defendant, the following points were presented:—

1. If before the order to sell the property in question for the payment of debts, a division of the real estate of William Kerr into three *equal* parts, was made by the heirs or their guardians, for the purpose of giving to each heir his part of the estate in land; and afterwards, the heirs and the guardian did make such division, and each selected his part; and they, together with the widow, fixed the price at $8 per acre, merely to know what they should pay the widow; and if there never was a sale by the administrator, nor any money paid him by James Mitchell or the other heirs, then said Mitchell took only a life estate in said property, and held the fee simple in trust for his wife, who became entitled to it at the death of her husband, discharged from his debts.

This point is answered in the affirmative.

2. If Mitchell procured his deed, and held the land as stated in the first proposition, then a purchaser at sheriff's sale, of the property on a judgment against James Mitchell, took no title thereto, and the verdict should be for the defendant.

And this also.

3. If the judgment on which the property was sold was given by James Mitchell and accepted by Henry Kinzer, for the purpose of cutting his wife and oldest son out of the property, then Henry Kinzer nor any person purchasing the property for him, under said judgment, could thereby obtain any title to said land—whether Kinzer actually loaned Mitchell the money or not.

If these facts be proved—the whole proceeding would be a fraud; and neither Henry Kinzer nor any one purchasing the property for him, could acquire title to the land.

4. If such judgment was a mere sham, or the money was returned to Kinzer, the purchaser (if he be in fact Henry Kinzer) acquired no title by the sheriff's deed, whether he had notice of defendant's title or not.

This is according to law.

5. If after the death of James Mitchell, his wife, who for years before had been separated from him, entered upon the land, claiming it as her own, and worked it for her sole benefit, and cut down and sold large quantities of wood and timber, and continued thus in possession and occupancy of it up to the time of the sheriff's sale, such possession, together with the Orphans' Court record returning the property *sold to the heirs*, and the way in which the deed is made, and the administrator's account settled, are notice to all the world of Mrs. Mitchell's title, and the plaintiff cannot recover.

If these facts be found by the jury, I am of opinion that they would constitute notice, according to this proposition.

6. If Kinzer's judgment was fraudulent, and the sheriff's deed was paid for by a receipt on said judgment, then Henry Kinzer, the real purchaser, is not a *bonâ fide* purchaser for value, and is not entitled to notice of defendant's title; and if George H. Kinzer did not pay any of the purchase-money, even if his father made him a present of the title, he is not an innocent purchaser, for a valuable consideration; and whether he had notice of Martha Mitchell's title or not, is wholly immaterial, and if the property was hers in law and equity, the verdict must be for the defendant.

In case these facts are established by the evidence, the conclu-

sions are sustained in law.    Notice in such case would not be requisite—the plaintiff could not recover.

With respect to the charge of fraud, there is one caution, which is always proper to be observed, namely, that fraud is never to be presumed; it must be proved, either directly by showing the fraudulent acts and purpose of the party, or indirectly by showing such circumstances in the conduct of the party charged, as are inconsistent with honesty and the principles of morality.

There is another rule of evidence to which the court was requested to advert, — in relation to the admissions of a party — that when declarations are received to charge a party, the whole declaration must be taken into consideration.    This rule applies to the admission of evidence, and to the proper weight to be given to the evidence when admitted.    As to the first point of view, the court is bound to admit the whole of the declaration, if any part be admitted. As to the second point of view, the jury weighing the declaration, in connexion with all the evidence in the case, may give to the several parts of it such belief as they are satisfied these are really entitled to, and may deem a part of the declaration to be true, and another part not true, according to the whole evidence.

To which charge of court, the plaintiff did then and there except, and prayed the court to allow this bill, which was done accordingly.

The jury having returned a verdict for the defendant, the plaintiff sued out this writ of error.

Errors assigned :  1st.  The court erred in admitting the evidence contained and set forth in the first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, seventeenth, eighteenth, nineteenth, twentieth, twenty-first, twenty-second, twenty-third, twenty-fourth, twenty-fifth, twenty-sixth, twenty-seventh, twenty-eighth, twenty-ninth, thirtieth, thirty-first, thirty-second, thirty-third, thirty-fourth, thirty-fifth, thirty-sixth, thirty-seventh, thirty-eighth, thirty-ninth, and fortieth bills of exception.

2d.  The court erred particularly in admitting the evidence contained in the tenth, eleventh, twelfth, and seventeenth bills of exceptions, being the declarations and acts of Martha Mitchell, out of the presence of Henry Kinzer or George H. Kinzer, the plaintiff in this suit.

3d.  The court erred particularly in admitting the testimony contained in the thirteenth and fifteenth bills of exception; being a

conversation with Henry Kinzer, the plaintiff in the judgment, without notice to the purchaser and plaintiff in this suit.

4th. The court erred particularly in admitting the evidence contained in the fourteenth, eighteenth, nineteenth, twentieth, twenty-third, twenty-fourth, twenty-sixth, twenty-eighth, twenty-ninth, thirtieth, thirty-first, thirty-fourth, and thirty-fifth bills of exception, being declarations and conversations of James Mitchell, made behind the back of Kinzer, and of which the purchaser had no notice.

5th. The court erred in their answer to the first and second points of plaintiff; also in their answer to the third point.

6th. Also the answer of the court to the fourth point of plaintiff, and also that part relating to notice.

7th. The answer to the fifth point of plaintiff is also erroneous.

8th. Also their answer to the sixth point of plaintiff.

9th. The court erred in their answers to all defendant's points, and particularly in the mode of answering same by adopting the assumed facts set forth in said points.

*Frazer* and *Champneys*, for plaintiffs in error, contended—

1st. That the decree of confirmation of sale by the Orphans' Court of the estate of William Kerr, deceased, sold by the administrator to James Mitchell, is conclusive, unless the same can be impeached by legal evidence of the fraud and collusion of the parties.

2d. The admission of the parol declarations of James Mitchell the purchaser and others to impeach the validity of the sale, and the title of the plaintiff, violated the well-settled principles of the law of evidence.

3d. The testimony offered and admitted of declarations made by the administrator of Kerr, to impeach the validity of his own deed, jeopards the security of all titles to real estate; and is opposed to the current of all the judicial decisions upon the subject.

Upon the first point, they cited Cauliff *v.* Macpherson, 11 S. & R. 428–429; Act 1st April, 1811; 5 Sm. 257; 20th section Act 17th April, 1794; Yohe *v.* Barnett, 1 Bin. 358; Flory *v.* Becker, 2 Barr, 470; Robb *v.* Beaver, 8 W. & S. 126; Galbraith *v.* Galbraith, 6 Watts, 112; 2 Starkie on Ev., ed. of 1826, 205–6–7; Act 29th March, 1832, P. L. 190.

On second point: Greenl. on Ev. sect. 98, 99, 100, 276–7–8; Packer *v.* Gonsalis, 1 S. & R. 526; McDonald *v.* Campbell, 2

S & R. 473; U. S. v. Mertz, 2 W. 406; Postens v. Postens, 3 W. & S. 127; Colt v. Seldon, 5 W. 525; Irvin v. Buckelow, 12 S. & R. 35; Iddings v. Iddings, 7 S. & R. 115; Stine v. Shirk, 1 W. & S. 195; Heiler v. Imbrey, 6 S. & R. 401.

Upon the third point, they cited Lichty v. Short, 450; 3 P. R. 450; Reichart v. Castator, 5 Bin. 109; Allison v. Kurtz, 2 W. 187–8; Selin v. Snyder, 7 S. & R. 172; Clyde v. Clyde, 1 Y. 92; Goodright v. Miller, 1 Y. 305; Hubley v. Wight, 2 Y. 133; Lewis v. Lewis, 2 W. & S. 458.

*Stevens*, contrà. — The administrator a competent witness: Kieffer v. Brenneman, 1 Barr, 452. Where land is apportioned among heirs by partition in the Orphans' Court, and the husband of one of them takes a part in right of his wife, and the deed is made to him, in his name as purchaser, he is a mere trustee for his wife; 1 S. & R. 460; 3 W. & S. 520; 9 W. & S. 131; Fogelsonger v. Somerville, 6 S. & R. 267; 3 W. & S. 223. Bill to perpetuate testimony, notice to Kinzer: Sug. on Vend. 542; 2 Peere Wms. 482. Possession sufficient notice to purchaser at sheriff's sale: 5 W. & S. 439; Cover v. Black, 493. Only *bonâ fide* purchasers protested: 1 Cow. 641. Evidence of conspiracy: 1 Greenl. Ev. 187, section 3.

*June* 12. COULTER, J.—This cause was here before, and is reported in 5 Barr, 216; then, the defendant below was plaintiff in error; and it was determined that Martha Mitchell, one of the three children of William Kerr, deceased, might impeach the proceedings in the Orphans' Court of Lancaster county, by which the plaintiff claimed title to be in James Mitchell, husband of said Martha, and also the judgment confessed by James Mitchell to Henry Kinzer, and the subsequent sheriff's sale to George Kinzer, on the ground of fraud; and was entitled to establish by competent evidence, that the proceedings in the Orphans' Court were not in reality a sale, but a mere mode of partition, adopted by the heirs for convenience; that James Mitchell never paid a farthing of money for the land, but held as the trustee of his wife Martha Mitchell, who, with the other heirs, throughout the whole transaction, understood the proceedings as in fact a partition. That no sale was in fact made, nor any purchase-money paid; and that Mitchell, after quarrelling with his wife, set up absolute title in himself, and confessed a judgment to Henry Kinzer, the father of George Kinzer, the plaintiff and purchaser at sheriff's sale, who never paid any money and had notice of the fraud.

The defendant, on the last trial below, offered evidence to maintain these allegations and positions, which was admitted by the court, and the plaintiff tendered forty bills of exceptions. It is impossible, in any reasonable compass, to go over and examine these forty bills of exceptions, *seriatim;* at any rate, it is useless to do so. They all embrace evidence, which, in connexion with the other facts, conduce or tend to prove the allegations made by the defendant. Their weight, either collectively or separately, was a matter for the jury. They do not cover facts which are impertinent or irrelevant—are not hearsay declarations—but are the acts and declarations of the parties in presence of each other; or the acts and declarations of the party to be prejudiced by them, in relation to the subject-matter, and in fact parts of the *res gesta,* and enter into the character of the whole transaction. If with a microscopic minuteness we shut out from our vision everything but individuated atoms, we will learn little of the world. The minute philosopher, who picked a pebble or a stone from a mountain, and averred that it was not a mountain, but a stone or pebble, would say true enough. But in its cohesive affinity with other things of a like kind, it nevertheless made a mountain. So, it will not do in morals or social transactions to segregate facts and circumstances, and attempt to judge and pronounce on the whole, by the separated or disjoined part. A just man, and I would say, a wise lawyer, must look at the whole transaction from beginning to end, to ascertain its true character. He must elevate his vision, and amplify his conceptions to the height and breadth of the case, or else he is' not over-anxious that it should be rightly decided. The plaintiff takes small detachments of the defendant's evidence, and objects to it as it is offered, and the argument in favour of the objection is that this fact is totally insufficient to overturn a paper title, verified by public seals and the records of courts. Very true. This might be said of every parcel of evidence covered by each of the forty bills of exceptions. This mode of argument was vehemently urged. Is it possible, said the learned counsel, that solemn records shall be overturned by a scrap of evidence like this? No, certainly not; but this scrap, taken in connexion with the other thirty-nine, may have been, and actually were, in the estimation of the jury, quite sufficient. Every separated item of testimony, although of itself it did not establish the fraud, did nevertheless look that way. It was relevant and germain to the matter—a link in the chain of events which Providence weaves in the rear of individuals, who by cunning and covin would thwart justice, to prevent

their purposes from being successful.   Facts or circumstances unconnected with the fraud alleged, and which could operate only by means of raising a prejudice against the individual, ought to be excluded.   But fraud, in its nature, eludes the light and walks in ambushes and deceits.   It is therefore that a latitude, to the extent of fair connexion with the transactions involved, on the part of the actor or actors who are to be affected, is allowed.   Fraud is never presumed; it must be proved.   But it is often most effectually proved by a chain of connected facts and circumstances.

These observations may suffice as an answer to the forty bills and corresponding assignment of errors.   This court is of opinion, that neither separately nor collectively, is there sufficient in them to disturb the verdict and judgment below.   Independent, however, of the parol evidence, that the proceedings in the Orphans' Court were designed by the widow and heirs as a convenient mode of settling the estate, they having, by the aid of a surveyor, made an amicable partition, by metes and bounds, and agreed which part should go to Mrs. Mitchell and which to the other two heirs; and agreed upon the sum at which it should be returned as sold, by the administrator, who was an uncle of the parties; the record itself, and the accompanying papers, contain the strongest evidence that the proceedings were a partition among the heirs, and not a sale.

Thus, the administrator had settled his final account, from which it appeared that there was a balance in favour of administrator of $157. This was approved 19th September, 1820, and the next day the administrator presented his petition for the sale of the real estate of William Kerr, deceased, for the payment of his debts, which was granted; and he returned that he had sold one-third of the land to James Mitchell, and the other two-thirds to Heidelbaugh, the guardian of the two minor children, and the sale was confirmed.   The obvious conclusion is, that as the administrator could not split up the estate and sell it in parcels, as he pleased, that the court never would have approved of the sale, unless as a matter of consent by all parties, and because the land was assigned to the heirs.   The next conclusion is, that the court would not have ordered the sale of the whole tract for the payment of the sum of $157 to the administrator, unless it had been a matter of consent and arangement all round, especially as the tract contained over one hundred and fifty acres, and each third as divided sold for something over three times the amount of debt.   The administrator settled his account in June, 1821, and charged himself with $1,260, the amount of the sale, and takes credit for $420, one-

third of the real estate sold to Mitchell, and to Heidelbaugh the guardian for the other two-thirds, retaining nothing for the balance due to him, and making the then balance due to him $255—the increase of the balance due to him being probably occasioned by the expenses and costs of the proceeding in the Orphans' Court. On the 24th February, 1830, Mitchell and wife executed a release to the administrator for their share of the estate of William Kerr, Mrs. Mitchell's father, in consideration of their having received from said administrator, "a deed duly executed for a certain tract or piece of land, situate in Colerain township, containing 52½ acres, marked No. 2, on the draft of the estate of William Kerr, deceased, it being one-third of the said estate, in full satisfaction of their share of the estate, and of their share and dividend of the said tract of land." The administrator testifies that he never received a cent from Mitchell, or Heidelbaugh,—that the land was divided among them. The deposition of the administrator, like everything else, was objected to, but its competency is fully established by the case of Kieffer v. Brenneman, 1 Barr, 452. But independent of that case, the administrator had not the slightest interest in the cause, and stood on the same footing that any other witness would have done, who testified to the same facts, with this advantage, that his knowledge was more accurate than that of any other person could have been. This was surely, in connexion with all the other facts, sufficient to go to the jury, for the purpose of establishing that the sale was intended as a mode of partition, and was not an absolute sale, and that Mitchell had paid nothing for the land.

In Kaufman v. Kaufman, 9 W. & S. 131, it was ruled that where husbands had procured a deed for the lands of their wives, by virtue of a sale by executors, where the money was to be divided among testator's daughters, and divided the land and executed deeds to each other, the husbands acquired nothing but the naked legal title, and upon their deaths the fee remained in their wives. In Fogelsonger v. Somerville, 6 S. & R. 267, it was held that where the husband agrees to take the land of the wife, and enters into recognisance, and the court decree the estate to him, the decree as to the wife's share is void, and on her death her share descends to her heirs—and a bonâ fide purchaser is in no better situation than the husband. In Weeks v. Haas, 3 W. & S. 520, the chief justice lays down the rule, clear and unshadowed, that the law raises a resulting trust in favour of the person whose money paid for the land, and if partition be made

by *feme coverts*, and mutual releases be executed to the husbands, they do not vest absolute estates, but they hold in trust for their wives. This rule contains in itself the purest light of equity. If then, the evidence satisfied the jury, that it was a partition, and that the setting up an absolute title in himself by Mitchell was a fraud against his wife, it was sufficient: because this court ruled in 5 Barr, 216, Mitchell *v.* Kinzer, that it was competent to establish these facts by evidence, without the record. In relation to the errors assigned by the plaintiff in error, as to the answers of the court to the various points proposed by the counsel for the plaintiff and the defendant, the learned judge below, admirable for his temper as well as for his intellect, submits the questions of fact to the determination of the jury; particularly the question of notice to the purchaser at sheriff's sale, as he was bound to do, with this correct qualification, that the acts and declarations of James Mitchell, after judgment rendered in favour of Henry Kinzer, not communicated to him or the purchaser at sheriff's sale, could not affect the rights of either, and the jury was bound to disregard them, unless they should believe from the evidence that there was a concerted plan between Mitchell and Kinzer, the plaintiff in the judgment in which the purchaser at sheriff's sale was a participant, to defeat the defendant Martha Mitchell, and deprive her of her interest in this property; and fully cautioned the jury that fraud must be proved.

And as to the law rising out of the case, the court conforms to the principles established in Mitchell *v.* Kinzer, 5 Barr, 216, which have been fully considered by this court, and are re-affirmed.

Judgment affirmed.