## American Travel & Hotel Directory Company, Assignee, for value of Henry Sweetsson, Inc., Appellant, v. Espy Curtis, Individually, and trading as Espy Curtis Company, Appellee.

### Gen. No. 29,172.

CONTRACTS—*when meeting of minds not shown.* In an action upon an alleged contract for advertising where the proposition signed by defendant was very difficult to understand and in many ways ambiguous and incapable of rational interpretation and its form suggested premeditated ingenuity rather than ignorance, *held* that the document, even if a contract could be found therein, demonstrates that it was intended to deceive and did deceive and therefore there was no meeting of minds and no binding contract.

Appeal by plaintiff from the Municipal Court of Chicago; the Hon. JAMES J. O'TOOLE, Judge, presiding. Heard in the third division of this court for the first district at the March term, 1924. Affirmed. Opinion filed February 11, 1925.

TELLER, LEVIT, SILVERTRUST & LEVI, for appellant; MORRIS K. LEVINSON, of counsel.

GARDNER & CARTON, for appellee.

MR. JUSTICE TAYLOR delivered the opinion of the court.

This is an appeal from a judgment in the municipal court of Chicago that the plaintiff, American Travel & Hotel Directory Company, take nothing in its suit against the defendant, Espy Curtis. The suit was brought by the plaintiff as assignee of Henry Sweetsson, Inc., upon an alleged contract for advertising which had been signed by the plaintiff and mailed to Sweetsson.

The plaintiff alleged in its statement of claim that the defendant on October 26, 1922, by means of a printed contract signed by the defendant, promised

to pay $50 a year for a period of three years for certain classified advertising in the American Travel Book and Hotel Directory; that the advertising was inserted in the directory for the year 1923, but the defendant refused to pay therefor. The defendant filed an affidavit of merits, and therein denied that he had ever entered into the contract or made the promise set forth in the plaintiff's statement of claim. On the trial, which was before the court without a jury, a printed document, somewhat in the nature of a folder, issued by Henry Sweetsson, Inc., consisting of five printed and one blank page, one page being signed by the defendant, was introduced in evidence, and the signature of the defendant thereon admitted.

It is the theory of the defendant that the text of the folder "was not set out in a clear and straightforward manner, but was directly calculated to deceive and mislead the party by whom it was received, and for that reason there was no meeting of the minds"; that it was so worded and arranged that it would lead the average person to believe that he was doing the sender a favor in furnishing the information for the benefit of those who would have occasion to refer to the plaintiff's publication; and that the defendant signed the folder with no intention to enter into a contract, and that, therefore, the folder was a fraudulent representation, and though signed by the defendant did not give rise to a contract.

It is the theory of the plaintiff that the signed document constitutes a valid and subsisting contract between the parties; that even though the defendant did not read carefully all the terms therein, or did not even know of their existence, or did not choose to read them, still, as a matter of law, he was bound by the obligations therein expressed.

The plaintiff was in the business of publishing and distributing travel and hotel publications, with offices

in New York City, and Henry Sweetsson, Inc., having become indebted to the plaintiff on January 15, 1923, assigned to the plaintiff the contract here sued upon. The defendant was in the business of making and selling automatic egg cookers and timers, and certain kinds of kitchen utensils. His place of business was located in Chicago, but he sold his manufactured articles throughout the United States. He had been in that business since 1893.

Some years prior to the time of the matter herein involved, the defendant had had an advertisement in a business directory issued by the plaintiff; that was a $3 listing of the defendant and his business, merely giving his address and location. The defendant testified that his advertising is chiefly confined to the "Hotel Monthly"; that only occasionally he advertised in other publications or directories.

Henry Sweetsson, Inc., on September 1, 1922, sent the folder containing the disputed contract to the defendant, and on October 26, 1922, the defendant having filled it out and signed it, mailed it back to Henry Sweetsson, Inc. As we have said, it contains six pages. The first page purports to be a letter written by Henry Sweetsson to the defendant. It begins by reciting that the writer finds the defendant's name in its files as catering to certain kinds of trade, and then, typewritten in red ink, is the question, "Does it belong there?" following which there is a blank in which the defendant wrote in ink, "Yes." The letter then, in a paragraph of seven lines, informs the defendant that Sweetsson desires to O. K. defendant's card, so that he may be kept posted, and informs him that the writer desires to help him revise his mailing lists, etc. It says, "Now, we are promoting a 'buyers' annual.' Inside this letter we tell you about it." Then follows this:

"Naturally we would like your display advertisement therein; but at least we feel you should support

Am. Travel & Hotel Directory Co. v. Curtis, 236 Ill. App. 236.

us to the extent of a brief history of your line of activity; what you sell and how.

"So, we thank you in advance for carefully reading over, then filling out and returning this form at once."

The most that can be attributed to that page of the folder, which purports itself to be a complete letter, with the date and address at the top and the signature at the bottom, is a request for information as to the defendant's business, and suggesting that the writer would like to have the defendant do some advertising in the Buyers' Annual. Pages 2 and 3 contain lists of manufactured articles under the title, "Check Listings You Desire Your Name and Address To Appear Under In This Directory." Three of the articles therein mentioned are checked off by the defendant in ink—egg timer, kitchen equipment and kitchen utensils.

Page 4 is in the form of a letter. It is as follows:

"Henry Sweetsson, Inc., 1133 Broadway, New York City, N. Y. In accordance with your proposal, printed elsewhere herewith, to produce a hotel buyers' guide as a supplement to the TRAVEL BOOK (and for free insertion, as offered by you in your HOTEL LETTER) we avail ourselves of the opportunity for listings therein and in addition to the classifications we have indicated as desirous of having our name, address, etc., recorded under, furnish the following data to aid you in preparing the proposed paragraph description of our activities.

Write Plainly

"Name under which our business is conducted.......
  *Espy Curtis & Co.*
Street address. *158 N. Ashland, City and State, Chicago, Ill.* Year established. *1893 Invented Egg Boiler.*
Do you sell hotels direct, or through jobbers, or through local distributors? (Say Which) *All*

If direct, do you extend reasonable credit on satis-
factory reference, or require cash with order, or
C. O. D.? (Say Which) *30 days*
Do you furnish catalogue or printed literature, and
on what subjects? *Yes, Automatic Egg Boilers and
schedule of time to boil.*
What other subjects, not included in items checked,
do you deal in, that a special heading may be cre-
ated to better represent your service to hotel buy-
ers?...........................
Do you control the sale, locally or generally, of any
special merchandise? If so state territory and
article.....................
Do you maintain branch offices or distributing depots
and where? *No*
Notice—The above information (and subjects checked)
to our best knowledge and belief, cover our activ-
ities of interest to hotel operators and buyers. It
is furnished that you may prepare therefrom, to
conform with your requirements such representation
for our business, as in your judgment will best serve
our purpose in soliciting trade from hotels, etc. No
acknowledgment of the co-operative support, or
'advance proof' of the listings and paragraph de-
scription of our representation is required.''
Signed, ''Espy Curtis, Proprietor,
Oct. 26/22 (Date of Mailing).''
On the last page appear the words, ''OUR PROPOSI-
TION.'' Then appear the words, ''FOR ADVERTISING IN
THE HOTEL SUPPLY SECTION OF THE TRAVEL BOOK.''
There then appears a paragraph announcing that the
travel book would carry a section of hotel supply an-
nouncements and recommendations of where to secure
almost every line of merchandise or service needful
to hotels, clubs, etc., and a short description of the
supply houses, so designed that a buyer may con-
veniently turn to a given locality and get necessary
information.

Following is this:

''To successfully produce the TRAVEL BOOK it is

deemed advisable to have a reasonable number of signed orders in the way of pledges of support for three years duration; orders which are irrevocable; orders which will justify the annual production and the expense of compilation, type setting, paper, press work, binding, etc. Your order on this form must be given and is accepted solely on that basis, and cancellation after three years guaranteed support, must be by registered mail, before January first prior to the publication of the subsequent edition so that both parties to this order are put on timely notice of its termination. These conditions are embodied herein, so that there may be no misunderstanding and unpleasantness; for, after all, a contract is only a meeting of minds and must be fair to both sides.''

Underneath the latter paragraph the rates for advertising are set forth, classified advertising being provided for as follows:

''Approximately 100 words, prepared by the publishers, from data contained on this order, and properly classified according to the name and activities of the advertiser, with revisions, from time to time, as necessary, $50.00 a year.''

It then contains the following:

''Payments to be made promptly as due on each annual edition of the TRAVEL BOOK as published and if so made, (in consideration of this three year contract) free duplication of the service will be made during the life of this order, in the quarterly HOTEL LETTER * * *

In anticipation of your immediately forthcoming support, we thank you.

HENRY SWEETSSON, INC.''

It is the contention of the defendant that ''a careful examination of the original document will convince the court that it was conceived in fraud and was cleverly worked out to trap the unwary.'' There is no doubt that the essential elements of what is offered and what purports to be accepted by reason of the defendant's signature are scattered and do not ap-

242    APPELLATE COURTS OF ILLINOIS.

Am. Travel & Hotel Directory Co. v. Curtis, 236 Ill. App. 236.

pear in that immediate conjunction found in contracts generally; and that as a result of that abnormal condition, an average reading of the folder would not give rise to any clear notion that a contract was solicited and provided for. It is claimed for the plaintiff that there is a specific offer to do certain things for a certain price, and that, upon being signed, there arose a promise to pay a certain amount. Of course, what the signer thought of it and about it, and as to just what it meant when he read it, are all negligible, provided it was a document reasonably comprehensible to the average mind. The whole matter was begun and concluded by correspondence, and so it only remained for the court to interpret the signed document.

Many cases have been cited going to show that it is the law that contracts may be avoided for fraud in their procurement. *Acme Food Co. v. Older,* 64 W. Va. 255, 17 L. R. A. (N. S.) 807; *Great Northern Mfg. Co. v. Brown,* 113 Me. 51, 92 Atl. 993. But here, as the folder was sent by mail to the defendant and no influences were used to persuade him to sign it other than those which arose from a reading of the document, a new question arises; that is, whether a document may be so formulated as in and of itself to constitute what may be called a fraud or cheat. It is the law, generally, that a man is bound by the papers that he signs, even though he did not read them.

In *Black v. Wabash, St. L. & P. Ry. Co.,* 111 Ill. 351, the court said:

"Where a party of mature years and sound mind, being able to read and write, without any imposition or artifice to throw him off his guard, deliberately signs a written agreement without informing himself of the nature of its contents, he will nevertheless be bound, for in such case the law will not permit him to allege, as a matter of defense, his ignorance of that which it was his duty to know, particularly when the means of information are within his immediate reach, and he neglects to avail himself of them."

In *Fivey v. Pennsylvania R. Co.,* 67 N. J. L. 627, the court said: "The fact that the plaintiff did not choose to read the paper, or the material parts of it, before signing, or did not know its contents at the time, cannot, in the absence of actual fraud, relieve him of his obligation." *Rice v. Dwight Mfg. Co.,* 2 Cush. (Mass.) 80.

If the defendant did not understand what he was signing, normally, it would be his duty to refrain from signing it or make inquiries as to what it meant, and not, to use the language in *Standard Mfg. Co. v. Slot,* 121 Wis. 14, 24, "throw upon the courts the burden of protecting him from consequences of his imprudence." *Dixon v. Clayville,* 44 Md. 573.

In *Taylor v. Turley,* 33 Md. 500, the court said:

"The contract must be construed by the natural and fair import of its terms, without reference to the hardship it may visit on the parties."

In 6 R. C. L. 624, the law is stated as follows:

"It is the duty of every contracting party to learn and know its contents before he signs and delivers it. He owes this duty to the other party to the contract, because the latter may, and probably will, pay his money and shape his action in reliance upon the agreement. To permit a party when sued on a written contract to admit that he signed it * * * but did not read it or know its stipulations, would absolutely destroy the value of all contracts." *Chicago, R. I. & P. Ry. Co. v. Hamler,* 215 Ill. 525.

In the instant case, the defendant said in words above his signature, "In accordance with your proposal printed elsewhere herewith * * * we avail ourselves of the opportunity for listings therein," and then said, that, in addition to the classifications already indicated, he furnishes "data to aid you in preparing the proposed paragraph description of our activities." The proposal, it is claimed, is the text as it appears on the last page, where the purpose of

244 APPELLATE COURTS OF ILLINOIS.

Am. Travel & Hotel Directory Co. v. Curtis, 236 Ill. App. 236.

the book to be issued was stated, and where the defendant is informed that in order that the book may be successfully produced "it is deemed advisable to have a reasonable number of signed orders in the way of pledges of support for three years duration; orders which are irrevocable; orders which will justify the annual production and the expense of compilation," etc. It then recites, further, "Your order on this form must be given and is accepted solely on that basis."

The words, "In accordance with your proposal, printed elsewhere herewith, to produce a hotel buyers' guide," it is claimed, refer to the contents of the last page. But, on the last page, the word "proposal" does not appear. It is true there are the words, "Our Proposition for advertising in the Hotel Supply Section of the Travel Book * * * and the Quarterly Hotel Letter." Is that what is referred to by the words, "to produce a hotel buyers' guide as a supplement to the Travel Book?" In the signed letter, the words are, "a hotel buyers' guide." In "Our Proposition," the words are, "Hotel Supply Section of the Travel Book." It may be claimed that the first refers to the second, but it is impossible, with reasonable certainty, to say that it does.

It will be seen, therefore, that the document in question is very difficult to understand. It is in many ways ambiguous and incapable of rational interpretation. It does not suggest that its unusual form and order of words were the result of ignorance, but rather of premeditated ingenuity. To hold that the defendant's signature bound him in some specific sum for the advertisement in question does not seem to be justified. In the first place, it is a serious question whether, upon the closest analysis and a reasonable interpretation, any contract was entered into, and in the second place, it is only fair to say that, even if by a strained interpretation a contract may

be found therein, the document, taken as a whole, demonstrates that it was intended to deceive, and did deceive; and, as a result, there was no meeting of minds, and so no binding contract.

The judgment, therefore, will be affirmed.

*Affirmed.*

O'CONNOR, P. J., and THOMSON, J., concur.