INTERNATIONAL TRANSPORTATION ASSOCIATION, Plaintiff, *v.* JOSEPH F. MOLLEN, Defendant.

City Court of Binghamton, ———— —, 1928.

*Merchant, Waite & Waite,* for the plaintiff.

*Mangan & Mangan,* for the defendant.

HACKETT, J.  This action was brought by the plaintiff, International Transportation Association, to recover from the defendant, Joseph F. Mollen, the sum of $100 and interest thereon, claimed by the plaintiff to be due them from the defendant for advertising which the plaintiff placed in a directory of railroads, steamships, also warehouse service, pursuant to a written authorization for such publication signed by the Mollen Transfer Storage Co., by Glen H. Allen, secretary and treasurer, and mailed to the plaintiff on August 31, 1926.

Issue was joined in the action by the filing of an amended answer on August 10, 1928.  The case was not tried, but was submitted to the court for a decision upon the pleadings and upon a stipulation of the facts.  It was stipulated by and between the attorneys for the respective parties to this action that the defendant received from the plaintiff Exhibit A by mail, which consisted of the letterhead of the plaintiff which was made up in the following manner: To the extreme left was a cut of the directory of railroads and steamships, also warehouse service.  In the center of printing, " Directory of Railroads and Steamships, also Warehouse Service, issued annually by the publication division, International Transportation Association, Incorporated, Transportation Building, Baltimore, Md."  To the extreme right of the letterhead and boxed in, was the following:

" OUR OFFER is to prepare a paragraph description (in this size type) containing about 50 words, rewritten from the data recorded below, publishing the same in this manual, for the sum of Fifty Dollars a year, payable by the advertiser, to the publishers on delivery of one copy of each year's edition containing the descriptive matter.  The service is to be for 1927, 1928, and thereafter until canceled by registered mail.  Typographical errors in the advertising service to be limited to 25% of the year's charge as full damages.

" All conditions of this offer are recorded hereon, and its acceptance constitutes an irrevocable contract for the first two operative years."

The first two words, " Our Offer," were set up in heavy black type and considerably larger than the balance of the printed matter in the box.  Underneath the cuts, heading and box hereinbefore referred to, appeared the following:

" The undersigned accepts your offer to prepare and publish a revised description of our activity in the DIRECTORY OF RAILWAYS AND STEAMSHIPS, ALSO WAREHOUSE SERVICE, to be made up from the following data:

" Classify under the City of Binghamton, N. Y.

" Mollen Transfer & Storage Co., 40–42 Commercial Ave., Est. 1876. Investment, $75,000. Whses. (MDSE & HHG) above address, 7,500 sq. ft., mill construction & brick. (MDSE & HHG) 42 Dickinson St., 18,000 Sq. ft., mill construction & brick. Consign all shipments via Erie — D. L. & W.— D. & H. Dist. Mdse & Hhg pool cars. City & interurban delivery of Mdse. Transfers Hhg. Motor truck & team service. Assoc: CNYWC. N F W Ass'n.

" Mollen Transfer & Storage Co., 40–42 Commercial Ave., Pres. & Gen. Mgr. Joseph F. Mollen, Sec. & Treas., Glen H. Allen.

" MOLLEN TRANSFER & STORAGE CO.

Name of warehouse or its operator

" By      GLEN H. ALLEN

" Date of mailing                                    *Sec. Treas.*
    " Aug. 31, 1926."                         Official Title

It is further stipulated that upon receipt of Exhibit A, a duly authorized representative of the defendant corrected the printed clipping pasted upon Exhibit A, and added thereto the typewritten addition, and thereupon signed the same and mailed Exhibit A to the plaintiff on August 31, 1926. It is further stipulated that the plaintiff fully performed the contract upon its part, published the defendant's advertisement in the 1927 issue of its annual directory, known as " Directory of Railroads, and Steamships, also Warehouse Service," and mailed a copy thereof, also printed copy of warehouse section only, to the defendant at Binghamton, N. Y., and that no paymen t for such advertising services was made to the plaintiff by the defendant; that the parties had certain correspondence, the purport of which was that the defendant claimed not to have seen the printed offer as set forth in Exhibit A, and asked that the contract be canceled — the plaintiff replying in a manner which plainly showed that they would hold the defendant to his contract, and that on or about April 1, 1928, the plaintiff mailed to the defendant a statement of account as follows:

" To 1927 advertising as per contract.......... $50 00
  To 1928 advertising as per contract..........  50 00

    Total................................. $100 00 "

It is further stipulated that the defendant did not observe the boxed-in portion of Exhibit A in the upper right-hand corner, and in signing and returning the same to the plaintiff supposed said advertisement of defendant's name and business was to be inserted in said directory by plaintiff without charge, and that defendant's attention was not expressly called to the printed matter in the upper right-hand corner of Exhibit A, other than by sending said Exhibit A through the mail; and further stipulated that if Exhibit A is not a binding contract, judgment is to be rendered in favor of the defendant, dismissing the complaint on the merits; but if Exhibit A is a binding contract, plaintiff is entitled to judgment for the relief demanded in the amended complaint.

The sole question submitted to this court is whether or not Exhibit A constitutes a valid and binding contract. We have here a clear case of offer and acceptance. Inasmuch as the offer was presented to the defendant by mail, and he had ample time to read over and consider the same before signing and returning, any question of fraud is eliminated.

Contracts of a similar nature to the one considered in this case have been before the courts of this State on numerous occasions. Counsel for the defendant have cited the case of *American Travel & Hotel Directory Co., Inc.,* v. *The Roycrofters* (125 Misc. 853) with a statement as follows: " The following recent case is identical in fact with the case at bar."

The facts in the case cited were quite similar with the case herein considered in that in that case the plaintiff sought to recover from the defendant for advertising space in " The Hotel Book.". The method of soliciting the advertising was the mailing to the defendant of a four-page letter which, having been signed by the defendant and returned, the plaintiff, relying thereon, published the advertising for the defendant in " The Hotel Book " in performance of its part of the contract — then sued to recover payment on the contract. The opinion of the learned judge who was sitting in the Supreme Court of Erie county has been quoted at length in the brief of the defendant, and while this court has the greatest respect for the decisions handed down by the higher courts, it feels duty bound to be governed by the decision of the highest court in the State which has passed upon the question herein involved, in the case of *American Travel & Hotel Directory Co., Inc.,* v. *Van Blerkom* (216 App. Div. 28).

The Appellate Division, First Department, passed upon a contract identical in form with the one which was considered by the learned judge writing the opinion in *American Travel & Hotel Directory Co., Inc.,* v. *The Roycrofters* (*supra*) and held that the

five-page letter when signed by the defendant and returned to the plaintiff, constituted a valid and binding contract.

The learned counsel for the defendant has cited the above case in his brief with the statement, " But that case is clearly distinguishable from the case at bar." Inasmuch as the contract considered in the case of *American Travel & Hotel Directory Co., Inc.*, v. *The Roycrofters* (*supra*) is identical with the one considered by the Appellate Division in *American Travel & Hotel Directory Co., Inc.*, v. *Van Blerkom* (*supra*), I am unable to understand how the facts in the former can be identical with the facts in the case at bar, and the facts in the latter are clearly distinguishable from the facts in the case at bar.

The circular letter, Exhibit A, came to the defendant through the mail. He had ample opportunity to read it and to become acquainted with its contents. The defendant was a business man actively engaged in business for a number of years, and able to read, write, speak and understand the English language.

The defendant urges that because he did not read the offer which was boxed in, in the upper right-hand corner of Exhibit A, he was not bound thereby, and that he entered into no contract for advertising with the plaintiff. It seems to me that it is quite immaterial whether the defendant read the offer as contained in the circular, Exhibit A, as a whole, or not. He is bound by the plain language and import of the circular. The first words in the body of the circular, Exhibit A, are as follows: " The undersigned accepts your offer." I am unable to believe that this defendant, who is charged with reading the body of the circular, and being a man of years of experience in business — able to read, write, speak and understand the English language — after reading those words, was not apprised of the offer as set forth in the upper right-hand corner of the circular letter. If he did not take the trouble after reading the words, " The undersigned accepts your offer," to avail himself of the opportunity of finding out what the offer was, he was nevertheless bound thereby.

Throughout the formation of contracts, it is to be observed that not assent, but what the other party is justified as regarding as assent, is essential. Accordingly, if an offeree in ignorance of the terms of an offer so acts or expresses himself as to justify the other party in inferring assent, and this action of expression was of such a character that a reasonable man in the position of the offeree should have known it was calculated to deceive the offeror into the belief that his offer had been accepted, a contract will be formed in spite of the offeree's ignorance of the terms of the offer. The commonest illustration of this principle is where one who is ignorant

of the language in wh ch a document is written, or who is illiterate, executes, under a mistake as to its contents, a writing proposed as a contract. He is bound, if he did not require the document to be read to him, and much more if the signer of a writing is not illiterate. " It will not do for him to enter into a contract and when called upon to abide by its conditions, say that he did not read it when he signed it, or did not know what it contained." (1 Williston Cont. § 35.)

Where a person signs a document, he is not permitted to show that he did not know its terms, and in the absence of fraud he will be bound by all of its provisions. Therefore, when an action is brought on a written agreement which is signed by defendant, the agreement is proved by proving his signature, and in the absence of fraud it is wholly immaterial that he had not read the agreement and does not know its contents. (13 C. J. 277.)

The defendant urges that there was no meeting of the minds of the parties and, therefore, no contract. There is no substance to this claim. Here we have the plain offer of the plaintiff to advertise at certain rates, and the acceptance by the defendant over his signature.

I am of the opinion that Exhibit A constitutes a valid and binding contract in that in the one instrument and on one sheet it contained a valid offer and acceptance, and it having been stipulated in the submission that the work, labor and services provided by Exhibit A to be performed by the plaintiff, were actually performed and were of the value of $100, this court finds that the plaintiff is entitled to recover from the defendant the sum of $100, with interest on $50 thereof from April 1, 1927, and with interest on $50 thereof from April 1, 1928, together with court costs amounting to $2.95, and statutory costs amounting to $13; making a total of $121.70.

Judgment entered accordingly.