OTTO BAEDEKER & ASSOCIATES, INC., *v.* HAMTRAMCK STATE BANK.

1. CONTRACTS—FAILURE TO READ NO EXCUSE.
     Generally, one who has executed contract will not be heard to say that he did not read it.

2. SAME—FRAUD—QUESTION FOR JURY.
     In action against bank on contract for advertisement in ''trade developer,'' where it appears that contract was included with questionnaire, which might be taken as mere request for information, but its true nature would have been disclosed by reading, whether defendant's cashier was induced by plaintiff's deception to sign without reading, *held*, under circumstances, question for jury.

3. SAME—MEETING OF MINDS.
     Testimony *held*, to justify jury in finding that, though careless, defendant was deceived by plaintiff's trick into executing contract without reading it, and, therefore, that minds of parties did not meet on contract.

4. SAME—CARELESSNESS NO DEFENSE TO INTENTIONAL FRAUD.
     Carelessness of party defrauded is not defense to intentional fraud.

5. SAME—CARELESSNESS INDUCED BY FRAUD BY TRICK.
     One may be excused from reading contract form when neglect to read is not due to carelessness alone, but is induced by some stratagem, trick, or artifice on part of one seeking to enforce contract.

6. COURTS—APPEAL—AMENDMENT OF PLEA.
     In action on contract, in court of common pleas, where defense was fraud, defendant was properly allowed to amend plea in circuit court, on appeal, to charge that fraud was part of general scheme of deceit on part of plaintiff, if said amendment was necessary.

As to contract obtained by circumvention and deceit, see annotation in 10 L. R. A. 606.

Appeal from Wayne; Webster (Arthur), J. Submitted January 21, 1932. (Docket No. 106, Calendar No. 35,547.) Decided March 2, 1932.

Assumpsit by Otto Baedeker & Associates, Inc., a Maryland corporation, against Hamtramck State Bank under an alleged advertising contract. Verdict and judgment for defendant. Plaintiff appeals. Affirmed.

*Welsh, Bebout, Hill & Lee,* for plaintiff.

*Lightner, Hanley, Crawford & Dodd (Beaumont, Smith & Harris, A. George Abbott,* and *Lewis S. Robinson,* of counsel), for defendant.

FEAD, J. The suit is on a contract "for special representation in Baedeker's International Trade Developer." The defense was fraud, that defendant's cashier was induced by the deception of plaintiff to execute the instrument without reading it and without knowing it was a contract.

The proposition was presented to defendant through the mail, by letter and form of contract, in October, 1928. The letter inclosed a clipping, containing defendant's name, its capital and surplus, names of some of its officers and correspondent banks, with statement that it represented the way defendant was recorded on plaintiff's card index record of data for publication in the next issue of the book. The letter was divided by a line. Above the line defendant's approval or correction of the clipping was requested. Below the line was a description of plaintiff's publication and the suggestion that defendant read and accept the offer inclosed if it desire special featuring in the book.

The contract form was larger than the letter. At the left was a scroll bearing the name of plaintiff and International Transportation Assn., Inc. At the extreme right top was the motto:

" 'Before You Invest—Investigate' for when accepted 'A Contract Is a Contract.' "

Just below and at the left was a picture of the book. Opposite it, at the right, in small type, was a blocked-out offer to publish an eight-inch announcement for the undersigned at $100 per year for two years. Between the book and the offer was a skeleton arrow pointing to the offer block and bearing the words, "HERE IS OUR OFFER." Below the arrow, in large type, were "FOR SPECIAL REPRESENTATION IN Baedeker's International TRADE DEVELOPER." The acceptance words, in two lines of small type, ran across the form below the caption. Immediately below this was a questionnaire for the information desired, widely spaced and occupying over half the form, which defendant filled out with the name and location of its bank, its financial resources, names of its president and cashier, the year of its charter, a list of special activities, correspondent banks, and bankers associations of which it was a member. At the lower left part of and indented in the questionnaire, in block of small type, was a description of Baedeker's International Travel Book, and the statement that advertisers accepting the offer would have free publication in the travel book during the life of their contract. Below was the place for signature, under the first line of which was the "Name under which the activity is conducted," the other lines being for signature of authorized officer and his title and location and date.

It may be noted that the cashier returned the form without his signature. Plaintiff sent it back to him, calling attention to the omission, and he then signed and sent it to plaintiff.

The contract itself was not confused, as in *American Travel & Hotel Directory Co.* v. *Curtis,* 236 Ill. App. 236, and *Same* v. *Roycrofters,* 125 Misc. Rep. 853 (213 N. Y. Supp. 42), in which it was held fraudulent. And the accompanying letter was more definite and specific in distinguishing between free and paid representation than the one considered in *International Transp. Ass'n* v. *Bylenga,* 254 Mich. 236. Moreover, the form of contract contained the arrow, the absence of which was noted in the latter case. Upon the face of the papers alone, the rule would be applicable that one who has executed a contract will not be heard to say that he did not read it. *American Travel & Hotel Directory Co.* v. *VanBlerkom,* 216 App. Div. 28 (214 N. Y. Supp. 753); *International Transp. Ass'n* v. *Mollen,* 133 Misc. Rep. 85 (230 N. Y. Supp. 665); *Publication Division, etc., Ass'n* v. *Blakeslee,* 225 App. Div. 229 (232 N. Y. Supp. 508); *Shannon* v. *International Transp. Ass'n,* 42 Ga. App. 297 (155 S. E. 773).

The testimony also shows that in 1928, 5,090 of the forms were returned to plaintiff with the index card approved or corrected and only 190 contracts signed. Of 132 banks in Michigan who returned the card only five executed the obligation to pay. It is evident that it cannot be said, as a matter of law, that an ordinarily prudent person would be likely to sign the contract without reading it. However, defendant presented evidence of deception and fraud which does not seem to have been submitted in the cases above cited.

Otto Baedeker has no connection with plaintiff. He was not clearly identified, but plaintiff claimed he was a German who wanted his name perpetuated and plaintiff assumed to do it. Defendant's contention is not without force, that the use of the famous name of ''Baedeker'' without better reason is some evidence of a purpose of plaintiff to deceive.

Defendant produced testimony that the controlling officer of plaintiff, Harold W. Phillips, for some years had been engaged in similar projects of securing subscriptions for like publications; that he had been in charge of the American Travel & Hotel Directory Company, and had contrived the contracts which were condemned in the *Curtis* and *Roycrofters Cases,* and of Publication Division of International Transportation Association, whose contract was held fraudulent in the *Bylenga Case* and in *Publication Division of International Transp. Ass'n* v. *Ford Transfer & Storage Co.* (Nebraska), unreported. It was shown that in 1924, on a Federal order to show cause why a fraud order should not be issued against the American Travel & Hotel Directory Company, Phillips made affidavit that he would not use a form combining a questionnaire, by reference or otherwise, with an obligation to pay money, and would not press collection of any account resulting from the use of such combination where the subscriber indicated that he was under misapprehension as to the character of the instrument he had signed. It also was shown that plaintiff had received many complaints from subscribers that they had signed the various forms without knowing they were contracts for the payment of money.

Defendant further presented the testimony of its cashier and other bankers that banks ordinarily re-

ceive a large number of inquiries for information for free listing in similar publications; that such inquiries are in general form like that of plaintiff, but that the form containing the questionnaire does not include a contract for payment of money; that the filling of the questionnaire is merely routine business; and, by reason of receiving a large number of such inquiries, the advertising and other matters in the questionnaire form frequently are not read. Defendant's cashier testified that he signed plaintiff's questionnaire in the ordinary course of business, without reading, and supposing it was like the others, merely wanting information. Three other bankers testified that they had signed identical forms sent out by plaintiff or the International Transportation Association without reading and under the impression they were the usual questionnaires for free listing.

The form of contract does not render the testimony of defendant's witnesses incredible. The instrument undoubtedly expresses the obligation to pay in such manner that it would be recognized by an ordinarily intelligent person who will take the time to read the instrument. In fact, it is evident that one would need to be careless to fail to appreciate the obligation. On the other hand, the general aspect of the instrument, the stating of the offer in small type, the separation of the acceptance from the offer, the blocking of advertising matter in the form, the circuity of the language, the inclusion in the contract of a questionnaire associated by the trade with free representation and which covers more than one-half of the sheet, make up an instrument in which the obligation to pay does not stand out and it cannot be said, as a matter of law, that a busy person, accustomed to receiving inquiries of

the same general form, would not be deceived by it into signing without reading.

On the whole, the testimony would justify the inference that Phillips for years had been engaged in fraudulent schemes of a similar nature; that he had changed the contract from time to time as he was driven to it by decision of court or Federal action; that, from many protests, he knew it was deceptive; that he continued to use a combination which, at least inferentially, he had acknowledged under oath was fraudulent; that plaintiff intentionally prepared its proposition in a form similar to other forms of questionnaires for information, with the expectation that a proportion of bankers would be deceived by it and would sign as a matter of routine, without reading, and under the impression that the instrument was an ordinary free listing form. In other words, the jury could find that plaintiff fraudulently intended to "capitalize carelessness," or, as the circuit judge put it, to "trap the unwary."

The testimony would also justify the jury in finding that, although careless, defendant was deceived by plaintiff's trick into executing the instrument without reading it, and, therefore, that the minds of the parties did not meet on a contract. Carelessness of the party defrauded is not a defense to intentional fraud. *Schupp* v. *Davey Tree Expert Co.,* 235 Mich. 268. We think the testimony properly presented a question for the jury under the *Bylenga Case*—that one may be excused from reading a contract form—

"when the neglect to read is not due to carelessness alone, but was induced by some stratagem, trick, or artifice on the part of the one seeking to enforce the contract."

In the court of common pleas, defendant pleaded fraud. In circuit court it was permitted to amend its plea to charge that the fraud was part of a general scheme of deceit on the part of plaintiff. If the amendment was necessary, it was properly allowed. *International Text-Book Co.* v. *Roberts,* 168 Mich. 501.

Judgment affirmed, with costs.

CLARK, C. J., and McDONALD, POTTER, SHARPE, NORTH, WIEST, and BUTZEL, JJ., concurred.