## Max Meadows Land and Improvement Company, Appellant, *v.* W. G. Mendinhall.

*Affidavit of defense—Sufficiency of affidavit alleging false representations.*

Great liberality is always exercised in the admission of evidence having a tendency to show fraud, and in determining whether the allegation is established the united force of the items of testimony having this tendency is to be considered. So where the fraud consists in false representations in which matters of fact and matters of opinion are so ingeniously joined as to make the whole deceptive and misleading, they are to be considered as a whole. Equity will relieve if one material allegation, relied on, was false.

*Practice, C. P.—Affidavit of defense—Sufficiency—Fraud.*

When an allegation of fraud is relied on in an affidavit of defense, the facts constituting the fraud should be fully set forth. But where representations inducing a contract are indefinite, an averment that such representations were false and fraudulent entitles defendant to have the bona fides of such representations intrusted to a jury.

*Practice, C. P.—Affidavit of defense—Setting out papers referred to therein.*

Without relaxing the rule which requires all papers, referred to in an affidavit of defense, to be set out it would be unreasonable to hold without qualification, that newspaper advertisements, handbills and printed prospectuses must be set forth in haec verba, when relied upon as elements in false and fraudulent misrepresentations.

*Fraudulent misrepresentations—Credulity of other party no defense.*

However negligent a party may have been to whom an incorrect statement has been made, yet that is no matter of defense. No man can complain that another has relied too implicitly on the truth of what he himself stated.

*Practice, C. P.—Refusal to enter judgment below seldom reviewed.*

The appellate courts will not interfere where rules for judgment have been discharged in the lower courts in doubtful cases, but only in such as are very clear and free from doubt; it must indeed be a very plain case of error in law to justify interference with the decree of the common pleas, discharging a rule for judgment.

Argued Oct. 5, 1896. Appeal, No. 48, Nov. T., 1895, by plaintiff, from decree of C. P. No. 4, Phila. Co., March T., 1895, No. 1037, refusing judgment for want of sufficient affidavit of defense. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed.

Assumpsit to recover on four promissory notes aggregating $593.34. Before THAYER, P. J.

Suit was brought on four promissory notes given in payment of deferred instalments of purchase money due on real estate. An affidavit of defense was filed thereto. Rule for judgment for want of a sufficient affidavit of defense was taken and a supplemental affidavit was allowed.

The copies of the affidavit and supplemental affidavit are as follows :

### AFFIDAVIT.

William G. Mendinhall, the defendant in the above case, being duly sworn according to law, deposes and says that he has a just, true, full and legal defense to the whole of the plaintiff's claim, of the following nature and character, to wit:

The notes upon which suit is brought are for deferred instalments of purchase money for two several lots of ground, No. 9, section 50, plan C, and No. 4, section 31, plan B, as plotted and laid out on certain plans of record in the clerk's office of the county court of Wythe county, Virginia, which lots were purchased by the defendant on the twenty-fifth day of October, 1890, at a public auction of the lands of the said company, held by the said company in Wythe county aforesaid. The defendant received for the said lots deeds dated October 25, 1890, and paid to the said company as the first instalment of the purchase money the sum of $296.66 on account of lots Nos. 9 and 4, the deferred instalments of purchase money for the said lots being secured by a deed of trust accompanied by the notes upon which suit has been brought, under which deed of trust the defendant conveyed the said lots to Joseph S. Clark, trustee, upon the trust that if said deferred payments should not be paid at maturity, the said lots were to be sold to satisfy the same. The defendant alleges that previous to and at the time of the sale of the said lots by the plaintiff to him, the said plaintiff, by its agents and officers and by printed handbills and advertisements printed by the said company in the newspapers, and by a prospectus advertising and publishing the sale of the said lots, falsely and fraudulently represented that the following industries were at the town of Max Meadows, in which the lots purchased by defendant were located, viz : A one hundred and fifty ton blast furnace under construction, that iron mines were being open and con-

nected with the furnace by railroad, that a brickyard was in active operation, and that the following industries had agreed to locate at said place : rolling mill and horseshoe works, a planing mill, sash, door and blind factory, and that negotiations were in progress and would probably be concluded within the next few weeks after the said October 25, for a machine shop, foundry, boiler and engine works, and that the said industries would employ at least from seven hundred to one thousand men, and would insure a population of from three to four thousand at the start.   The said company, by its officers and agents, and by the said prospectus, handbills and advertisements, falsely and fraudulently represented that it had secured the services of a competent manager, having a large acquaintance among manufacturers of the north, who would make it his special business to induce new industries to locate at the said place, that negotiations were in progress with quite a number, and there was every reason to believe that during the next six months or year many new industries in addition to those already secured would be located and the population largely increased thereby.   And the defendant alleges that the said representations were made by the said company, its officers and agents, falsely and fraudulently, to induce the defendant to purchase the lots aforesaid, and to give the notes upon which suit is brought, and that if it had not been for said representations and inducements the defendant would never have signed the notes upon which suit has been entered, and the defendant further alleges that the blast furnace was never completed, or, if completed, has always remained idle ; that the iron mines have not been worked to any extent; that no brickyard is in active operation, as the said prospectus alleged ; no rolling mill, or sash, door and blind factory, as stated in the said prospectus was established at said place ; nor any machine shop, foundry, boiler and engine works, and that instead of a population of from three thousand to four thousand, as said prospectus stated would be insured, the entire population amounts to but a few hundred.

And the defendant further alleges that the said Max Meadows Land & Improvement Company, by its officers and agents, and by handbills, advertisements and prospectus, made false and fraudulent representations with reference to the growth of said place, among them being one that the Norfolk and Western

Railroad Company proposed to erect a handsome stone passenger station on the ground reserved for the purpose, and that work would be commenced within the then coming year, but, as a matter of fact, no handsome stone passenger depot or station was erected by the said railroad company, nor was work commenced within the then next coming year, upon said station by the said company, nor has work been commenced thereon up to the time excepting to make excavations for foundations.

Defendant further alleges that the said lots of ground deeded to him by the company are practically worthless and of vastly less value than the amount already paid on them by him.

Defendant further alleges that at the said public sale the lots bought by the defendant were represented as being clear of incumbrance, and that the deeds for the said lots from the plaintiff to the defendant conveyed the said lots with covenants of general warranty free from all incumbrances of every kind and character, and when the defendant purchased the same, he supposed he had purchased unincumbered property, and alleges that Randal McGavock and others, his heirs at law and children, on the 1st day of February, 1888, long prior to the sale of the said lots by the said heirs and children to the Max Meadows Land & Improvement Company, executed to S. W. Jameson, trustee for A. M. and W. M. Fuller, a deed of trust to secure said parties in the sum of $20,000, which said lien and incumbrance still remains unpaid and unsatisfied of record against the lots purchased by the defendant as aforesaid, and the defendant alleges that this incumbrance and defect in the title of the plaintiff was known to the plaintiff at the time the defendant made the purchase and contract, and was concealed by it from him and never disclosed to him by the said company, and has only been recently ascertained by him since his purchase of the aforesaid lots, and defendant alleges that he would never have entered into said contract and purchased said lots had it not been for the false and fraudulent representations of the said company, as above set out, nor if the said company had disclosed to him the defects in its title to the lots aforesaid. And defendant further alleges that the equity in him above the incumbrance aforesaid is practically worthless and of vastly less value than the amount paid by him on account of said lots as aforesaid.

And the defendant claims to recover back from the plaintiff

the total amount paid by him as aforesaid, to wit, $296.66, with interest from October 25, 1890, and is willing, if the plaintiff so desires, to deed back the lots aforesaid.

The defendant further alleges that the notes upon which suit is brought accompanied the aforesaid deed of trust, and were delivered in Wythe county, Virginia, and that at the suit of one John C. Brady, who had bought a lot of ground from the plaintiff under the same prospectus and false and fraudulent representations as those under which the defendant bought his lots, the circuit court of the said Wythe county ordered and decreed that the said Max Meadows Land and Improvement Company should by reason of the false and fraudulent representations aforesaid, pay back to the said Brady the amount which he had paid on account of his purchase, and that the said decision is in full force and effect and recognized as such in said Wythe county, Virginia.

The above stated facts the defendant avers, he has been informed of, verily believes, and expects to be able to prove at the trial of this cause.

### SUPPLEMENTAL AFFIDAVIT.

William G. Mendinhall, the defendant in the above case, being duly sworn according to law, deposes and says, that the first instalment of the purchase money for the lots of ground referred to in the plaintiff's statement of claim was paid at the time the auction sale was held, and that previous to and at the time of the sale of the said lots, the plaintiff by its officers and agents, and by printed handbills and advertisements printed by the said company in the newspapers and by a prospectus, advertising and publishing the sale of the said lots, falsely and fraudulently represented that the following industries were at the town of Max Meadows, in which the lots purchased by the defendant, were located, namely, a one hundred and fifty ton blast furnace under construction, that iron mines were being opened and connected with the furnace by railroad and that a brick yard was in active operation and that the following industries had agreed to locate at said place, viz : Rolling mill and horse-shoe works, a planing mill, sash, door and blind factory, and that negotiations were in progress and would probably be concluded within the next few weeks after the said October 25th,

for a machine shop, foundry, boiler and engine works and that the said industries would employ at least seven hundred to one thousand men, and would insure a population of from three to four thousand at the start. The said company, by its officers and agents and by the said prospectus, handbills and advertisements, falsely and fraudulently represented that it had secured the services of a competent manager, having a large acquaintance among manufacturers of the north, who would make it his special business to induce new industries to locate at the said place, that negotiations were in progress with quite a number, and there was every reason to believe that during the next six months or year, many new industries in addition to those already secured, would be located and the population largely increased. And the defendant alleges that the said representations were false and were made by the said company, its officers and agents falsely and fraudulently to induce the defendant to purchase the lots aforesaid, and to give the notes upon which suit is brought, and that if it had not been for such representations and inducements, the defendant would never have signed the notes upon which suit has been entered, and the defendant further alleges that the blast furnace was not and never has been completed, and that the same has never been operated, and that the iron mines were not and never had been opened, except to take out a small quantity of ore which has never been smelted in the furnace, that no planing mill except of the most insignificant size and capacity has been or ever was established; that no sash, door and blind factory have been or ever were established at the said town, nor any machine shop, foundry, boiler and engine works as said prospectus stated, and that instead of a population of from three to four thousand as the said prospectus stated would be insured, the entire population has never amounted to more than a few hundred. And he further alleges that the plaintiff never secured the services of a competent manager who made it his special business to induce new industries to locate at the said place and alleges that no handsome stone passenger depot or station has been or ever was erected by the Norfolk & Western Railroad Company at said place as the plaintiff's agents falsely and fraudulently represented would be done.

The above stated facts the defendant avers, he has been in-

404 LAND AND IMP. CO., Appellant, *v.* MENDINHALL.

Statement of Facts—Opinion of the Court.  [4 Pa. Superior Ct.

formed of, verily believes and expects to be able to prove at the trial of this case.

Rule for judgment being discharged, plaintiff appealed.

*Error assigned* was in refusing to enter judgment against the defendant for want of a sufficient affidavit of defense.

*Owen B. Jenkins*, with him *John F. Keator* and *J. S. Free-mann*, for appellant.—The sale for which the notes in suit were given was made by public auction on the grounds in question, and defendant below had full opportunity to ascertain the truth of the representation of plaintiff below; Mahaffey v. Ferguson, 156 Pa. 156.

The representations to the vendee that certain improvements are contemplated are expressions of opinion, and, unless known by the one making the representations to be false, are no defense to a suit for the price: Bradfield v. Land Co., 8 Southern Rep. 363; Birmingham Co. v. Land Co., 9 Southern Rep. 235; Cooke v. Cook, 14 Southern Rep. 171.

The affidavit is defective in that it fails to set forth copies of the papers on which defendant relies for his defense: Richards v. Bisler, 3 W. N. C. 485: Birkey v. Whitaker, 4 W. N. C. 137; Erie City v. Butler, 120 Pa. 374; Hebb v. Ins. Co., 138 Pa. 174.

If the title has been conveyed and accepted and a bond given for the purchase money or a part thereof, the general rule is there can be no abatement of the purchase money except in case of mistake, imposition or fraud: Comegys v. Davidson, 154 Pa. 534.

All real property and contracts and instruments affecting the title thereto are exclusively subject to the laws of the government within whose territory the land is situated: Milne v. Moreton, 6 Binn. 352; 3 Am. & Eng. Ency. of Law, 563.

*John F. Lewis*, for appellee.

OPINION BY RICE, P. J., April 12, 1897 :

Great liberality is always exercised in the admission of evidence having a tendency to show fraud, and in determining whether the allegation is established, the united force of the

items of testimony having this tendency is to be considered: Montgomery Web Co. v. Dienelt, 133 Pa. 585. So where the fraud consists in false representations in which matters of fact and matters of opinion are so ingeniously joined as to made the whole deceptive and misleading, they are to be considered as a whole. If any one material representation relied on was false, equity will relieve, although such representation may not have been the sole inducing cause of the contract: Sutton v. Morgan, 158 Pa. 204–213. By taking up each of the alleged false representations separately, and giving it a literal interpretation, and not considering what was the effect, and intended to be the effect, of the representations taken as a whole, a very plausible argument can be made to show that the literal falsity of some of the representations is not sufficiently alleged, and that others were statements of mere matters of opinion. But even according to this method the plaintiff's counsel are not wholly successful in showing that this is true of all of them. For example, one of the alleged representations was that the plaintiff "had secured the services of a competent manager, having a large acquaintance among manufacturers of the north, who would make it his special business to induce new industries to locate at the said place." The affidavit denies that the plaintiff ever "secured the services of a competent manager who made it his special business to induce new industries to locate at the said place." We are asked to brush aside these allegations, as of no account, because the defendant does not allege that the plaintiff had not secured the services of a manager whom they *believed* to be competent. Upon an appeal from an order refusing judgment we ought not to act upon the assumption that the plaintiffs had engaged a manager, whom they believed to be competent, or that they had engaged any manager. The defendant alleges that the representation, as made, was untrue in a material part, and that it was fraudulently made.

Again it is alleged that the plaintiffs "falsely and fraudulently represented that the following industries had agreed to locate at said place : rolling mill and horseshoe works, a planing mill, sash, door and blind factory, and that negotiations were in progress and would probably be concluded within the next few weeks after the said October 25, for a machine shop, foundry, boiler and engine works." This was a representation of exist-

ing facts within the knowledge of the plaintiff, and not a statement of mere matters of opinion or conjecture ; it was made for the purpose of inducing the defendant to buy lots and to give his notes therefor, and it is alleged that it was believed by him and was one of the inducements. . Is it sufficiently averred that it was false and fraudulent ? If the representation had been that certain persons, naming them, had agreed to locate industries at the place, a bare allegation that the representation was falsely and fraudulently made might not be sufficient. Where an allegation of fraud is relied on in an affidavit of defense the facts constituting the fraud should be fully set forth. And in the case supposed, the defendant would be expected to aver specifically that the persons named had not agreed to locate industries there. But owing to the indefiniteness of the representations in this particular the most that could be reasonably expected of an honest defendant would be that he should aver that the representation was false and fraudulent and that the industries mentioned never were located there. If this is not sufficient to entitle him to have the truth and bona fides of these representations submitted to a jury, then no more successful method of deceiving and defrauding by false representations can be devised than by so adroitly wording them as to make it impossible for the person deceived to prove their falsity except by inference. If the plaintiff made these representations in good faith, believing them to be true they will have an opportunity of showing it before a jury. .

It may be said that the defendant ought not to have relied on the representations without inquiring as to what persons had agreed to locate industries at the place, and with whom negotiations for the location of other industries were being made. On this point it has been well said : " However negligent the party may have been to whom the incorrect statement has been made, yet that is a matter affording no ground of defense to the other. No man can complain that another has relied too implicitly on the truth of what he himself stated:" Kerr on Fraud and Mistake, 81 ; Sutton v. Morgan, 158 Pa. 204 ; Braunschweiger v. Waits, 179 Pa. 47.

It is urged that the affidavit is defective because a copy of the prospectus is not attached. We do not mean to relax the rule upon the subject of setting forth copies of papers referred

to in affidavits of defense.   But the rule is to have a reasonable application, and it would be unreasonable to hold, without qualification, that all the newspaper advertisements, hand bills and printed prospectuses must be set forth in hæc verba.   Besides that, the affidavit alleges that the false representations were made by the officers and agents of the company, as well as in the advertisements.   This would be sufficient to sustain the affidavit without reference to the printed matter referred to.

It seems both unnecessary and unadvisable to further discuss the merits of the case in advance of the trial; for it is to be borne in mind that it comes before us at this time on appeal from an order discharging the rule for judgment for want of a sufficient affidavit of defense.   The act allowing appeals from such interlocutory orders was intended to reach only clear cases of error in law, and thus to prevent the delay of a trial.   Numerous cases might be cited in support of this proposition, but I shall refer to only a few.   "In doubtful cases and especially in those requiring broad inquiry into facts, where the court refuses judgment the matter in controversy should go to the jury as the proper tribunal to decide the cause under proper instructions from the court:" Griffith v. Sitgreaves, 81* Pa. 378 ; Radcliffe v. Herbst, 135 Pa. 568.   "It requires a clear case to induce us to reverse the court below under such circumstances, for the reason that a refusal to enter judgment sends the case to the jury, where the rights of the parties can be properly disposed of:" Murphy v. Cappeau, 147 Pa. 45.   "We do not mean to interfere where rules for judgment have been discharged in the lower courts in doubtful cases, but only in such as are very clear and free of doubt, as we have frequently said:" Ensign v. Kindred, 163 Pa. 638.   "It must be a very plain case of error in law, if we sustain appeals in such cases as this, from the decree of the common pleas discharging the rule.   The decree being interlocutory, no injury can result to the complaining suitor other than delay of final judgment:" Ætna Ins. Co. v. Confer, 158 Pa. 598.

Tested by the rule laid down and followed by the Supreme Court in these and other cases, the appeal should be dismissed, thus leaving the question as to the truth, the bona fides and the materiality of the alleged representations to be determined after

the facts are fully developed on the trial, and the law of Virginia has been duly proved. See Musser v. Stauffer, 178 Pa. 99.

The appeal is dismissed at the costs of the appellant but without prejudice, etc.