# Schock v. The Solar Gas Light Company, Appellant.

*Evidence—Particular fact—Link in the chain—Fraud.*

Evidence may be legally admissible as tending to prove a particular fact, which yet by itself is utterly insufficient for the purpose. It may be a link in the chain, but it cannot make a chain unless other links are added. This rule applies particularly to cases of fraud.

Facts or circumstances unconnected with the fraud alleged, and which could operate only by means of raising a prejudice against the individual, ought to be excluded. But fraud in its nature eludes the light and walks in ambushes and deceits. Therefore, a latitude, to the extent of a fair connection with the transactions involved, on

the part of the actor or actors who are to be affected, is allowed. Fraud is never to be presumed; it must be proved. But it is often most effectively proved by a chain of connected facts and circumstances.

In an action of ejectment, where the issue is to determine whether real estate bought from an assignee in bankruptcy was in fact the property of the bankrupt, a verdict in favor of the purchasers will be sustained where a course of dealing is shown between the bankrupt and a corporation in whose name he had placed the title from which the jury could draw the inference that the transaction was intended to defraud the bankrupt's creditors.

Argued May 18, 1908. Appeal, No. 293, Jan. T., 1907, by defendant, from judgment of C. P. Lancaster Co., Jan. T., 1904, No. 25, on verdict for plaintiffs in case of H. C. Schock et al. v. The Solar Gas Light Company. Before Fell, Brown, Potter, Elkin and Stewart, JJ. Affirmed.

Ejectment for land in Mount Joy. Before Landis, P. J.
The opinion of the Supreme Court states the case.
Verdict and judgment for plaintiffs. Defendant appealed.

*Errors assigned* were various rulings on evidence and in submitting the case to the jury.

*W. U. Hensel* and *D. McMullen*, for appellant.

*Wm. H. Keller*, with him *John A. Coyle*, for appellees.

Opinion by Mr. Justice Stewart, October 5, 1908:

The question here at issue was whether Samuel Kurtz, as whose property the premises in dispute were sold by his assignee in bankruptcy to the plaintiffs, was at the time of such sale the real owner, notwithstanding the fact that the legal title was in the defendant's predecessor, the Tanners' Mutual Fire Insurance Company. The effort on the part of the plaintiffs was to show that in the original acquisition of the several properties, Kurtz was the real purchaser, and that title was taken in the name of the insurance company with the double purpose, first, to secure the company for a loan made by it to Kurtz to enable him to make the purchase, and second, to con-

ceal Kurtz's ownership from his existing creditors; and to show further that of the money loaned to Kurtz by the company, all had been repaid except the sum of $2,044.61, and that Kurtz's ownership of the property remained as originally acquired, subject only to the payment of this balance to the company. All the assignments of error, with an exception hereafter to be noted, relate to rulings of the court in admitting certain offers of evidence in support of plaintiff's contention. These do not require separate consideration, since each offer was to the same end, all were alike in general character, and all were objected to on the same ground—immateriality and irrelevancy. It may be that the evidence proposed in no one of the offers, would be sufficient in itself to warrant a legal inference of fraud. But this is not the test by which relevancy of evidence is to be determined. "Evidence may be legally admissible as tending to prove a particular fact, which yet by itself is utterly insufficient for the purpose. It may be a link in the chain, but it cannot make a chain unless other links are added:" Express Co. v. Wile, 64 Pa. 201. The rule as here stated finds most frequent application in cases where the effort is to establish fraud. This is because fraud always attempts concealment, and is ordinarily discoverable only as all the circumstances attending the transaction disclose it. In such inquiry a wide latitude is allowed. The true limit of such latitude is nowhere better defined than in Kinzer v. Mitchell, 8 Pa. 64, where it is said: "Facts or circumstances unconnected with the fraud alleged, and which could operate only by means of raising a prejudice against the individual, ought to be excluded. But fraud in its nature eludes the light and walks in ambushes and deceits. It is, therefore, that a latitude, to the extent of a fair connection with the transactions involved, on the part of the actor or actors who are to be affected, is allowed. Fraud is never presumed; it must be proved. But it is often most effectively proved by a chain of connected facts and circumstances." The connection between the several offers in this case, and the particular transaction involved, is too apparent to call for discussion. Each was an offer to show something in the conduct of the parties to be affected, in the course of their business with relation to

the matter in controversy, consistent with the theory advanced by plaintiffs, that the ownership of the property was in Kurtz, and which would necessarily call for explanation before any other theory could prevail. Except as these offers tended to establish the fraud charged, they were absolutely without prejudice to anyone.

The remaining assignments, three in number, are directed to a single point—the sufficiency of the evidence to support the verdict. Collectively considered, the relevancy of the evidence for the plaintiff contained in the several offers becomes all the more apparent. The connection between them is at once observable, and together they exhibit a complete history of the transaction out of which the controversy arises. If the narrative thus exhibited be accepted as true, it is so strongly persuasive of the fact sought to be established—that the insurance company either in acquiring legal title to the premises, or in subsequently asserting such title against the creditors of the real owner, was, in complicity with such owner, attempting a fraud,—that in the absence of countervailing evidence no jury would be justified in reaching a different conclusion. It would be useless in this connection to discuss the entire evidence. A brief reference to some salient feature will suffice. These show a purchase by Kurtz in his own name at a public sale of two of the properties at the price of $2,590. By written article he personally became bound for the unpaid purchase money, and gave as his surety Bechtel who at the time was treasurer of the insurance company. A year and a half later Kurtz caused the deed for the properties to be made directly to the insurance company. Not only do the records of the insurance company show no authorization for the purchase of these properties, but the company's ledger shows that after the conveyance to the company, in the account with Kurtz, the latter was individually charged with the entire purchase money, and from time to time credited with interest thereon. The company never was in actual possession of either of the properties. Kurtz managed and controlled them as his own, never accounting to the company for any rents or income. Nowhere in the books or records of the company is there anything which

can be construed into a claim of ownership by the company. The purchase of the other property—the Mt. Joy gas plant—was made ostensibly by Bechtel, and the deed therefor was to him in his individual capacity. Here again the books of the company show no authorization of the purchase; nor for that matter do they show anything that reflects light upon the acquisition of the properties, whether by payment of purchase money or anything else. It is from Bechtel's testimony alone that the fact is derived that $733 of the purchase money in this case was paid out of funds of the insurance company. His check for this amount, or the record of it, was produced on the trial; but for this sum a charge is made against Kurtz on the company's ledger, together with interest from the date of Bechtel's check. Immediately upon the conveyance of the property to Bechtel the latter gave to Kurtz a power of attorney to manage the property "as fully, largely and amply as he could do if personally present." Kurtz did so manage it, but made no return of income to either Bechtel or the insurance company. In 1895, Bechtel retiring from the treasuryship, conveyed the property to the insurance company. If the plaintiff's case presented nothing more than the facts we have stated, these alone would be quite sufficient to warrant an inference of fraud, and a submission to the jury would have been unavoidable. There was more, however, and in a large measure; but we are concerned here only with sufficiency of the evidence to carry the case to the jury. Its sufficiency for this purpose abundantly appeared from the evidence we have referred to. The case was very carefully submitted by the learned judge presiding, in a charge which brought to the attention of the jury every explanatory circumstance relied upon by the defendant, and every particle of evidence which could avail it in any way. The charge was so entirely fair and impartial, and so free from error, that it stands clear of all complaint here. The verdict, as we read the evidence, vindicates itself just as certainly. The defendant in the action derived its title to the property in dispute from the Tanners' Mutual Fire Insurance Company. Since it is not pretended that the former has any equities other than those that could be asserted by the

latter, it is unnecessary to distinguish them further in any discussion of the case.

The assignments of error are overruled and the judgment is affirmed.