## Ashland Towson Corp. *v.* Kasunic, Appellant.

Argued April 14, 1933.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADT-FELD and JAMES, JJ.

*F. G. Moorhead,* and with him *J. G. Marshall, J. Q. Salmon* and *G. W. Moorhead* of *Moorhead & Marshall,* for appellant, cited: Land & Improvement Company v. Mendinhall, 4 Pa. Superior Ct. 398; Montgomery Web Company v. Dienelt, 133 Pa. 585; American

Travel and Hotel Directory Company v. Hotel Governor, 28 Dauphin County Reports 363.

*Stewart P. McConnel,* for appellee.

OPINION BY KELLER, J., October 2, 1933:

This is an appeal by defendant from judgment entered for want of a sufficient affidavit of defense. The rule in force in this State, in passing upon such matters, is that summary judgment should not be entered if a substantial doubt exists as to the propriety of its entry: Gordon v. Continental Casualty Co., 311 Pa. 109, 111, 166 Atl. 557; Eizen v. Stecker Inc., 295 Pa. 497, 145 Atl. 606; Davis v. Investment Land Co., 296 Pa. 449, 146 Atl. 119; Armstrong v. Connelly, 299 Pa. 51, 149 Atl. 87; Kunkel v. Aircraft Control Corp., 101 Pa. Superior Ct. 35. In all those cases the judgment of the lower court was reversed because the appellate court was not satisfied that the plaintiff's right to judgment for want of a sufficient affidavit of defense was sufficiently clear and free from doubt.

The present action was brought to recover the sum of $200 on a paper—partly printed and partly written—signed by the defendant as assistant cashier of the Freedom National Bank, which, in its printed form, requested a lot of information relative to the officers, condition and activities of the bank, and left blanks to be filled in by the defendant, which information was designed for use in a "Popular price $1 pocket size Banker's Manual," or directory of banks and trust companies, which plaintiff was publishing; and which also contained an offer by the plaintiff to print in said manual a half-page (four by four inch) advertisement of said bank for a period of five years for $500, the signing of the paper to constitute an acceptance of the offer. The information desired, which was headed in very large type 'Bankers Manual,'

took up two-thirds of the paper, and below it and just above the name of the city, and the date, and the blank for the signature, appeared the following in small indented block form: "If an illustration of our building or its interior, or a reproduction of our logotype appears therein, we agree to pay $5 annually therefor. Cross out if this additional service is not desired." This was crossed out.

At the bottom, below the signature, and under a leaded line, in small type, appeared a 'Publishers Notice,' which dealt with advertising in the manual and prescribed a rate for half page announcements of $200 for one year, $175 a year for two years, $150 a year for three years, $125 a year for four years or $100 a year for five or more years continuous service, and that the offer "is made on a five year basis subject to adjustment to the foregoing rates should liquidation, breach of contract or other unforeseen development justify cancellation."

The plaintiff, publisher of the manual, brought a prior suit against the Freedom National Bank for $200, and upon its filing an affidavit of defense that Kasunic, who signed the paper as assistant cashier, had not been authorized to sign for the bank, the present action was begun against him individually. See Wolff v. Wilson, 28 Pa. Superior Ct. 511; Lukens v. Crozier, 84 Pa. Superior Ct. 402.

The affidavit of defense set up that the defendant in his capacity of assistant cashier had received from the plaintiff a questionnaire requesting certain information concerning the Freedom National Bank for the purpose of using this information in compiling a bank directory; that he filled in the information and signed the questionnaire believing that he was simply furnishing information for the convenience of the plaintiff without any intention to contract with any one for any purpose whatever; that he wrote his name and

official title at the bottom of the alleged contract only for the purpose of informing the plaintiff that the information concerning the bank had been supplied by one in a position to have knowledge thereof.

The defendant also averred, in substance, that the form of the alleged contract was fraudulent, deceptive and misleading, in that it combined a questionnaire for use in compiling a bank directory with the alleged obligation to advertise therein; and that it had been designed by plaintiff with a view to involving banks in a contractual obligation by imposing upon their desire to supply bank directories with accurate information; that it is customary for publishers of bank directories annually or semi-annually to send out forms similar to the one used by plaintiff requesting information, but without involving the signer in any contract for advertising, which bankers fill out and sign as a matter of courtesy and convenience, and that defendant had frequently been called upon to supply such information; that said form of contract was fraudulent, deceptive and misleading in that the words constituting the alleged obligation were printed in small type in the heading of a form similar to that used by legitimate bank directories to secure requested information and so placed as to appear to be a part of the letterhead and not connected with or related to the signature line below the information furnished; that the alleged contract was fraudulent, misleading and deceptive in that the words 'Bankers Manual' were printed in large type between the words forming the alleged obligation and the form for supplying information, which was signed by defendant, thus making the latter appear to be a separate unit, and not related to or connected with the words in small type in the heading; that Harold W. Phillips, treasurer of the plaintiff corporation, who made affidavit to the plaintiff's statement, had been engaged

in the publication of directories in other fields of business, and in connection with such enterprises had sent out forms similar to the one in the present case and that in proceedings instituted by the Post Office Department of the United States he had, under oath, agreed not to use such forms as fraudulent and that the present use of such form was in violation of such agreement; that a large number of banks in Pennsylvania and elsewhere had been deceived and misled by the fraudulent and deceptive form of the alleged contract in suit.

It is undoubtedly the general rule that one who has executed a contract will not be heard to say that he did not read it; but where it is established that the other party was guilty of deliberate fraud in preparing a contract designed to mislead and take advantage of the unwary,—or even careless,— whom he might be able to trap by the form of contract thus fraudulently prepared, another factor enters into the case. There is another rule applicable to such a situation, viz., that one guilty of deliberate fraud in his dealings with another cannot defend his fraud or deceit by averring that the other party to the contract was careless; that carelessness of the party defrauded does not prevent his defending against deliberate and intentional fraud. The conflict between these two legal principles was discussed by the Supreme Court of Kentucky in Western Mfg. Co. v. Cotton & Long, 126 Ky. 749, 104 S. W. 758, 760, where the question was said to be: "Is it better to encourage negligence in the foolish than fraud in the deceitful . . . . . . Either course has most obvious dangers. But judicial experience exemplifies that the former is least objectionable and least hampers the administration of justice." This case was cited with approval by the Supreme Court of Michigan in International Transportation Co. v. Bylenga, 254 Mich. 236, 236 N. W. 771, relied

on by the appellant, where a somewhat similar contract relating to a Directory of Railroads and Steamship and Warehouse Service, was successfully defended against on the ground of deliberate fraud in the designing and preparation of the contract. The Supreme Court said in that case, "This court has many times held that one who signs a contract will not be heard to say, when enforcement is sought, that he did not read it, or that he supposed it was different in its terms ...... But the general rule announced in those cases is not applicable when the neglect to read is not due to carelessness alone, but was induced by some stratagem, trick or artifice on the part of the one seeking to enforce the contract."

The rule has long been applied in this State in prosecutions for obtaining money, etc., by false pretenses. See Com. v. Henry, 22 Pa. 253, 256, where the Supreme Court, speaking through Mr. Justice WOODWARD, said: "Nor is it less a false pretense because the party imposed upon might, by common prudence, have avoided the imposition;" and Com. v. KoEune, 69 Pa. Superior Ct. 176, 181, where this court, speaking through the late Judge HENDERSON said, "It can not be declared as a matter of law that the prosecution can not be sustained because the prosecutor did not read the instrument which he signed before signing it. The statute was not enacted for the protection of the shrewd and capable only ...... It is not less a false pretense because the party imposed upon by the exercise of common prudence might have avoided the imposition." To same effect: Com. v. Conroy & Kline, 109 Pa. Superior Ct. 274. It would be an anomaly in the law, indeed, to hold that the perpetrator of deliberate fraud might be deprived of his liberty and sent to prison for having by these means defrauded a careless victim, but that he could retain and

enforce in a court of law, the advantages which he secured over another by designed and deliberate stratagem, trick or artifice, merely because the victim was careless.

In support of his contention appellant also cites American Travel & Hotel Directory Co. v. The Roycrofters, 213 N. Y. Supp. 42, where in treating of a similar contract the court said: "To enforce such a contract would be but to lend the aid of the court to the artifice and trick of men who desired to sell their wares, not by honest dealing but by intentional deceit"; and Schupp v. Davey Tree Experts Co., 235 Mich. 268, 209 N. W. 85, where the signature to a contract was obtained from the plaintiff Schupp, without his reading it on the false representation that it was only a record for the home office. The court said, "The fraud worked because plaintiff was careless, but this did not render it any less a fraud ...... His [plaintiff's] guilelessness on this occasion should not cause us to overlook the guile employed by defendant's representative."

In his argument in the court below appellant chiefly relied on the case of International Transport Co. v. Bylenga, supra. The lower court distinguished that case from this one, by noting that there were circumstances there present which tended to support the claim of alleged fraudulent design on the part of the one preparing the contract, and which were relied on by the court in that case in arriving at the conclusion that the contract had been "designedly prepared by the plaintiff in such a manner as to cause an ordinary business man to affix his signature in the place indicated without reading" the portion which constituted the contract for advertising; and that these circumstances or some of them so relied on by the court in that case were lacking here; and preferred to follow the case of Publication Division v. Blakeslee, 232 N.

Y. Supp. 508. But in that case, as well as in American Travel & Hotel Directory v. Van Blerkom, 214 N. Y. Supp. 753; International Trans. Assn. v. Mollen, 230 N. Y. Supp. 665; and Shannon v. International Trans. Assn., 155 S. E. 773 (Ga. App.) also relied on by appellee, fraud was not specifically alleged as a defense against the contract.

Since the case was argued in the court below, a later decision of the Supreme Court of Michigan has been reported, (Otto Baedeker & Associates, Inc. v. Hamtramck State Bank, 257 Mich. 435, 241 N. W. 249), which is more nearly like our case on its facts, and certainly no stronger for the defense, in which the court bases its action on the general principles applicable to the case, apart from the minor differences which distinguish it on the facts from this case. In that case which was an appeal by plaintiff, the publisher of a directory, from a judgment on verdict in favor of the defendant,—the claim being for special representation in Baedeker's International Trade Developer,—the defense was fraud, that defendant's cashier was induced by the deception of plaintiff to execute the instrument, which had been received by mail, without reading it and without knowing it was a contract. The court recited the details relative to the form of contract, which were very similar to the one in suit, but which laid more stress, than was done in the present form, on the fact that a contract was being executed by the signer. It then used the following pertinent language: "The contract itself was not confused, as in American Travel & Hotel Directory Co. v. Curtis, 236 Ill. App. 236, and American Travel & Hotel Directory Co. v. Roycrofters, 125 Misc. Rep. 853, 213 N. Y. S. 42, in which it was held fraudulent. And the accompanying letter was more definite and specific in distinguishing between free and paid representation than the one considered in International

Trans. Ass'n v. Bylenga, 254 Mich. 236, 236 N. W. 771, 772. Moreover, the form of contract contained the arrow, the absence of which was noted in the latter case. Upon the face of the papers alone, the rule would be applicable that one who has executed a contract will not be heard to say that he did not read it. American Travel & Hotel Directory Co. v. Van Blerkom, 216 App. Div. 28, 214 N. Y. S. 753; International Trans. Ass'n v. Mollen, 133 Misc. Rep. 85, 230 N. Y. S. 665; Publication Division, etc., Ass'n v. Blakeslee, 225 App. Div. 229, 232 N. Y. S. 508; Shannon v. International Trans. Assn., 42 Ga. App. 297, 155 S. E. 773 ...... It is evident that it can not be said, as a matter of law, that an ordinarily prudent person would be likely to sign the contract without reading it. However, defendant presented evidence of deception and fraud which does not seem to have been submitted in the cases above cited ...... Defendant produced testimony that the controlling officer of plaintiff, Harold W. Phillips, for some years had been engaged in similar projects of securing subscriptions for like publications; that he had been in charge of the American Travel & Hotel Directory Company, and had contrived the contracts which were condemned in the Curtis and Roycrofters Cases, and of Publication Division of International Transportation Association, whose contract was held fraudulent in the Bylenga Case and in Publication Division of International Transportation Association v. Ford Transfer & Storage Co. (Neb. Commissioner's Decision unreported). It was shown that in 1924, on a federal order to show cause why a fraud order should not be issued against the American Travel & Hotel Directory Company, Phillips made affidavit that he would not use a form combining a questionnaire, by reference or otherwise, with an obligation to pay money and would not press collection of any account resulting from

the use of such combination where the subscriber indicated that he was under misapprehension as to the character of the instrument he had signed. It also was shown that plaintiff had received many complaints from subscribers that they had signed the various forms without knowing that they were contracts for the payment of money. Defendant further presented the testimony of its cashier and other bankers that banks ordinarily receive a large number of inquiries for information for free listing in similar publications; that such inquiries are in general form like that of plaintiff, but that the form containing the questionnaire does not include a contract for payment of money; that the filling of the questionnaire is merely routine business; and, by reason of receiving a large number of such inquiries, the advertising and other matters in the questionnaire form frequently are not read. Defendant's cashier testified that he signed plaintiff's questionnaire in the ordinary course of business, without reading, and supposing it was like the others, merely wanting information. Three other bankers testified that they had signed identical forms sent out by plaintiff or the International Transportation Association without reading and under the impression they were the usual questionnaires for free listing. The form of contract does not render the testimony of defendant's witnesses incredible. The instrument undoubtedly expresses the obligation to pay in such manner that it would be recognized by an ordinarily intelligent person who will take the time to read the instrument. In fact, it is evident that one would need to be careless to fail to appreciate the obligation. On the other hand, the general aspect of the instrument, the stating of the offer in small type, the separation of the acceptance from the offer, the blocking of advertising matter in the form, the circuity of the language, the inclusion in the contract of

a questionnaire associated by the trade with free representation and which covers more than one-half of the sheet, make up an instrument in which the obligation to pay does not stand out and it cannot be said, as a matter of law, that a busy person, accustomed to receiving inquiries of the same general form, would not be deceived by it into signing without reading. On the whole, the testimony would justify the inference that Phillips for years had been engaged in fraudulent schemes of a similar nature; that he had changed the contract from time to time as he was driven to it by decision of court, or federal action; that, from many protests, he knew it was deceptive; that he continued to use a combination which, at least inferentially, he had acknowledged under oath was fraudulent; that plaintiff intentionally prepared its proposition in a form similar to other forms of questionnaires for information, with the expectation that a proportion of bankers would be deceived by it and would sign as a matter of routine, without reading, and under the impression that the instrument was an ordinary free listing form. In other words, the jury could find that plaintiff fraudulently intended to 'capitalize carelessness,' or, as the circuit judge put it, 'to trap the unwary.' The testimony would also justify the jury in finding that, although careless, defendant was deceived by plaintiff's trick into executing the instrument without reading it and, therefore, that the minds of the parties did not meet on a contract. Carelessness of the party defrauded is not a defense to intentional fraud. Schupp v. Davey Tree Expert Co., 235 Mich. 268, 209 N. W. 85. We think the testimony properly presented a question for the jury under the Bylenga case— that one may be excused from reading a contract form 'when the neglect to read is not due to carelessness alone, but was induced by some stratagem, trick or artifice on the part of the one seeking

to enforce the contract.' In the court of common pleas, defendant pleaded fraud. In circuit court it was permitted to amend its plea to charge that the fraud was part of the general scheme of deceit on the part of plaintiff. If the amendment was necessary, it was properly allowed. International Text-Book Co. v. Roberts, 168 Mich. 501, 134 N. W. 460.''

While it is true that, ordinarily, it is not sufficient to allege fraud in general terms, but facts must be set forth from which the court may find the fraud, yet it is not necessary for the pleader to set forth his evidence. The affiant did not rest satisfied with mere general charges of fraud, but in substance and effect alleged that the whole scheme was deliberately and fraudulently designed to entrap officials of a bank, who gave it only a cursory reading, into thinking that they were furnishing information desired for the publication of a Bankers' Directory in the form that such information was usually obtained, without any obligation on their part, unless they subscribed for the book at one dollar or had a picture of the bank or its interior inserted in the book, for which the charge would be five dollars. The affidavit briefly referred to facts, which, when received in evidence in the Baedeker case, the court there held justified the charge of deliberate fraud, artifice and design; that Harold W. Phillips, the acting officer of the plaintiff, had been the moving spirit in other of the fraudulent directories which had entrapped unwary officials into signing advertising contracts, and that following a fraud order issued by the Post Office Department, he had agreed not to combine a questionnaire with an advertising contract. We are not satisfied that this evidence would not be admissible, as our courts give the widest latitude in the uncovering of fraud: Max Meadows Land & Imp. Co. v. Mendinhall, 4 Pa. Superior Ct. 398; El Dorado Jewelry Co. v. Hopkins, 34 Pa. Superior Ct. 446; and

if the postal officials have found by experience that the combination of a questionnaire with an advertising contract is liable to lead to fraud and imposition on one intending to furnish information but not desiring to advertise in the publication, we think it is relevant and admissible evidence to prove design and intention to defraud by one who has been informed of the Goverment's position and who has agreed not to act contrary to it. The combined effect of the averments and the evidence to support them may be enough to prove a designed fraud, although each link in the chain standing by itself would be insufficient: Schock v. Solar Gas Light Co., 222 Pa. 271, 71 Atl. 94. The scheme must be viewed as a whole: Buffum, Trustee v. Peter Barceloux Co., 289 U. S. 227.

The averments of the defendant in his affidavit of defense must be given their fair intendment and so considered we are not satisfied that the case was one for a summary judgment.

It is an interesting fact to note that, in nearly all the cases arising out of alleged fraudulent contracts for directories, advertising, etc., examined by us the publisher was a corporation of which the Harold W. Phillips involved in this case was either the, or a, leading officer.

The assignment of error is sustained. The judgment is reversed with a procedendo.