## Gross et ux. v. William Penn Fire Ins. Co.

*Abram Orlow,* for plaintiffs.

*Swartz, Campbell & Henry,* for defendant.

WINNET, J., April 20, 1944.—This suit seeks to recover a $500 deposit made by plaintiffs in the purchase of a property of defendant, Wm. Penn Fire Insurance Company. The basis of this suit is the alleged fraud of defendant through its agent, James Breen, in misrepresenting that the property could also be used by plaintiffs for conducting a tailor shop. Defendant denies any misrepresentation and stands on the written agreement which purported to sell the property subject to existing incumbrances and restrictions.

The case was tried without a jury. At the very outset defendant's counsel objected to any testimony of the circumstances which led to the agreement or of the alleged fraud, the basis of plaintiffs' action. According to counsel for defendant, plaintiffs having executed an agreement of sale were bound by it and defendant by nothing else. Obviously, fraud will invalidate a contract and may always be shown: Ashland Towson Corp. v. Kasunic, 110 Pa. Superior Ct. 496; Moore et al. v. Tyler et al., 86 Pa. Superior Ct. 261; Devers v. Sollenberger, 25 Pa. Superior Ct. 64; A. L. I. Restatement of Contracts, sec. 476.

The testimony clearly indicated a material misrepresentation to plaintiffs. Plaintiff Philip F. Gross, a tailor, had seen a "for rent" sign on the property. He went to Walter W. Hutzel, the real estate agent for the defendant insurance company, to make inquiry. It then developed that defendant was more interested in selling the property than in renting it. Mr. Hutzel testified:

"We knew that Mr. Gross was in the tailor business and he was looking for another location to open up a tailor store. . . . I knew he wanted a tailor store and I said there was no tailor, as far as I knew there, and

there were no restrictions against a tailor store. I called Mr. Breen on the phone and asked him if there were any restrictions on the property and he said, no, not any."

Plaintiffs were sent by Hutzel to see James Breen, president of defendant insurance company, for the purpose of arranging the financing of the sale. According to plaintiffs, Breen urged them to purchase and encouraged them as to the possibilities of the section for a tailor shop. Finally they agreed to purchase, but as defendant insurance company was at the time only mortgagee in possession a lease was drawn up for the property to give plaintiffs immediate possession. The lease indicated that it was being leased "as a private reputable dwelling". An agreement of sale was also drawn up at the same time, August 5, 1940, under which the deposit of $500 was made and in which the premises were conveyed "clear of all liens and incumbrances excepting existing restrictions and easements of record".

Plaintiffs after taking possession immediately encountered difficulty. They discovered that the zoning code prohibited the use of the premises for a tailor shop. They complained to defendant and an endeavor was made to change the zoning law. This was unsuccessful. Following an arrest for a violation of the zoning code plaintiffs vacated the premises.

Plaintiffs brought an equity suit in Court of Common Pleas No. 3, December term, 1940, no. 5359, praying for cancellation of the lease and the agreement of sale and for a return of the deposit. By stipulation of counsel filed of record and approved by that court, the agreements of sale and lease were declared void, but the recovery of the deposit was left open and resulted in the present suit.

Defendant's defense is the written agreement. Breen did attempt to deny the alleged misrepresentation.

His testimony is not creditable. Hutzel, admittedly the agent of defendant, frankly stated that he knew that plaintiffs were seeking a place not only for a residence but where they could conduct a tailor shop. When trouble first arose over the zoning restrictions he wrote on September 24, 1940, to Breen, saying:

"At the time we sold the property, we advised him there were no restrictions on the property objecting to a store. I think possibly, it would be our duty to take it up with the Zoning Board and file the necessary application, etc."

The letter written by Breen in reply makes no comment or protest. The very most that might be said for Breen is that the misrepresentation which he did make was honestly made.

The question, therefore, resolves itself—what is the effect of such misrepresentation? It was made by Hutzel, agent of defendant, in the first instance after he had inquired from Breen, who was president of the insurance company. It was repeated by Breen before the agreement was signed. That a principal is liable on misrepresentations of an agent is well settled: Griswold v. Gebbie et al., 126 Pa. 353; Bachman v. Monte et al, 326 Pa. 289, 296; A. L. I. Restatement of Agency, sec. 261.

The modern concept of the doctrine of fraud and misrepresentation does not necessitate conscious error nor negligence on the part of the person making the misrepresentation: A. L. I. Restatement of Contracts, sec. 470, comment (a). This is in line with the Pennsylvania law. In Moore et al. v. Tyler et al., supra, at p. 265, the court said:

"The false representation which will invalidate a contract must be of a material fact known to be untrue by the party making it, or *recklessly made without any sufficient ground for believing it to be true, and intended to be acted upon by the person deceived and actually misleading him to his injury.*" (Italics supplied.)

Williston on Contracts in section 1494 says: "There is a growing unwillingness on the part of the courts in dealing with fraud as well as with warranty to allow statements to be made without liability, which are calculated to induce, and do induce, action on the part of the hearer."

Plaintiffs were seeking not only a residence but a place to conduct a tailor shop. Defendant's agent, who had the property for rent and for sale, and Breen made a representation that the premises could be used for a tailor shop. It did induce plaintiffs to make the purchase. Common honesty should prompt defendant to return the deposit which plaintiffs made.

Williston on Contracts, sec. 1500, says: "It is not necessary, in order that a contract may be rescinded for fraud or misrepresentation, that the party making the misrepresentation should have known that it was false. Innocent misrepresentation is sufficient, for though the representation may have been made innocently, it would be unjust to allow one who has made false representation, even innocently, to retain the fruits of a bargain induced by such representation. This is often called a doctrine of courts of equity as distinguished from courts of law, and doubtless in its origin it was such; but, at the present time, it is rather a distinction between a right of rescission on the one hand whether that right is asserted in a court of equity, in a court of law, or without the aid of a court, and an action for damages on the other hand."

The representation by defendant that the house could be used for a tailor shop cannot be classified as an opinion. A statement in regard to incumbrances is not regarded as an opinion to come under section 474 of the Restatement of Contracts: Carpenter et al. v. Wright, 52 Kans. 221, 34 Pac. 798. Nor is a statement as to the amount of taxes due on the premises a matter of opinion: Wright v. U. S. Mortgage Company of Scotland,

42 S. W. 789 (Tex.). A statement regarding the area of land encompassed in a transfer is not a matter of opinion: Griswold v. Gebbie et al., supra. In that case the court held that a misrepresentation by an agent as to area, which induced a purchase, entitled the purchaser to rescind the transaction if the jury is satisfied that it was made with "such conscious ignorance of its truth as to be equivalent to a falsehood". In all the cases cited above the vendee could have ascertained the truth of the representation and in each case the court allowed recovery.

Here we have a tailor, desirous of purchasing a home and a place for his business. He goes to the real estate man representing defendant. He goes to the president of defendant, a member of the bar. He is informed that they have such a place for him. A confidential relationship existed between the parties under the circumstances. In McCown et al. v. Fraser et al., 327 Pa. 561, 565, the court said:

"In general it may be said that a confidential relation will be deemed to exist whenever the relative position of the parties is such that the one has power and means to take advantage of, or exercise undue influence over the other. . . . In such case the party in the superior position is obligated, legally as well as morally, to act with the most scrupulous fairness and good faith, and to refrain from using the trust and confidence reposed in him to secure an advantage for himself."

In view of this relationship, even if the statement relied upon by plaintiffs is regarded as an opinion, plaintiffs could recover. In Erie City Iron Works v. Barber & Co., 106 Pa. 125, the court held that if an opinion is falsely and fraudulently rendered by one professing to have expert skill and special knowledge it is legal fraud. Certainly, plaintiffs were reasonable in relying on defendant's professed knowledge of the property which it had for sale.

The court finds for plaintiffs in the sum of $500, with interest thereon from August 5, 1940, or in the sum of $611.25.